J. V. Poe *et al.* Appellants, *vs.* Clarence Ulrey *et al.*
Appellees.

*Opinion filed February 20, 1908.*

1. Appeals and errors—*question of freehold may be waived in
the Appellate Court.* Where the question of a freehold is raised by
the pleadings but is not insisted upon or determined in the trial
court, and the case is taken to the Appellate Court upon assigned
errors, joined· in by the appellees, which the Appellate Court had
jurisdiction to determine and which did not include the question
of freehold, such question is waived, and cannot be urged as show-
ing a want of jurisdiction by the Appellate Court.

2. Leases—*when an oil and gas lease involves a freehold.* A
lease, of unlimited duration, giving the lessee the right to enter
upon land occupied as a homestead for the purpose of prospecting
for oil and gas, drilling and operating, and erecting the necessary
buildings, pipe lines, etc., is in such respect a conveyance of an
interest in the freehold estate of homestead and is within the stat-
ute relating to the conveyance of such interests.

3. Same—*grantee of oil and gas has no title to same until it is
found.* Oil and gas, though classed as minerals, are incapable of
absolute ownership owing to their liability to escape, and though
they belong to the owner of the land as long as they remain under
the land, a grant by him to another of oil and gas is a grant of
such oil and gas as the grantee may find, and the grantee is not
vested with any title thereto until it is actually found.

4. Same—*when an acknowledgment of receipt of consideration
cannot be contradicted.* A recital of the receipt of consideration in
a conveyance cannot be contradicted by parol for the purpose of
invalidating the instrument or impairing its effect as a conveyance,
notwithstanding the rule that a court of equity may, for the pur-
pose of applying equitable principles and granting equitable reme-
dies, inquire into the real consideration, although the contract is
under seal and recites a consideration.

5. Same—*when lessor cannot complain that provisions of lease
are harsh.* In the absence of any questions of fraud or want of
competency to contract, a lessor who voluntarily enters into a
lease cannot· have the same set aside upon the ground that its pro-
visions are harsh and unjust.

6. Same—*provision giving option to lessee to terminate lease is
not invalid.* A provision in a lease giving the lessee the option to
surrender the lease for cancellation at any time upon payment of
one dollar is not invalid, even though the lessor has no option to

compel the surrender, and its presence in the lease does not create a tenancy at will nor justify the cancellation of the lease at the instance of the lessor.

7. SAME—*what does not authorize forfeiture of lease.* Where an oil and gas lease gives the right of forfeiture to the lessor if the lessee does not complete a certain test well on adjoining land within a specified time, but provides that if a well upon the lessor's farm is not completed within one year the lessee shall pay a certain rent per acre, if the lessee completes the test well on time and elects to pay rent to the lessor instead of completing the well on his land, the lessor cannot forfeit the lease for breach of an implied agreement to reasonably develop the lessor's farm for the production of gas and oil.

8. SAME—*when a remedy is by action for breach of contract.* Failure of the lessee to comply with an agreement in an oil and gas lease providing that if the first well should be found productive of oil and gas the lessee would continue with due diligence to drill wells upon other lands comprising the block of leases as long as paying wells should be found, does not give rise to a right to forfeit the lease but only to maintain an action for damages for breach of contract.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Clark county; the Hon. E. R. E. KIMBROUGH, Judge, presiding.

H. C. BELL, and W. W. SHULER, for appellants.

GOLDEN, SCHOLFIELD & SCHOLFIELD, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On January 27, 1905, J. V. Poe and Mary E. Poe, his wife, the appellants, and Clarence Ulrey, one of the appellees, executed the following instrument:

"In consideration of the sum of one dollar, the receipt of which is hereby acknowledged, we, J. V. Poe and wife, of Martinsville township, Clark county, Illinois, parties of the first part, hereby grant and lease unto Clarence Ulrey,

of Martinsville, Illinois, party of the second part, all the oil and gas in and under the following described premises, namely: All that lot of land situated in Martinsville township, Clark county, Illinois, described as follows, to-wit: The south-west quarter of the north-east quarter of section 31, town 10, north, range 13, containing forty acres; also the north one-half of the south-east quarter of the north-east quarter of section 31, town 10, north, range 13, containing twenty acres; also the south one-half of the north-east quarter of the north-east quarter of section 31, town 10, north, range 13, containing twenty acres,—in three descriptions containing eighty acres, more or less,—together with the right to enter thereon at all times for the purpose of drilling and operating for oil and gas, and to erect and maintain all buildings and structures and lay pipes necessary for the production and transportation of oil and gas. To have and to hold the above described premises for the term of five years from the date hereof, and as much longer as oil or gas is found in paying quantities on said premises, on the following conditions: Second parties shall, within twelve months from date hereof, drill to completion a test well upon said premises; if gas is found in sufficient quantities to transport, second parties agree to pay first parties the sum of $100 per year for the gas product of each well from which gas is transported, payable annually when a market is found for the gas, and first parties to have gas free of cost to heat and light one dwelling house, to be transported at first parties' cost. If oil be found in paying quantities, the first parties shall have the one-eighth part of all oil produced and saved from said premises, to be delivered in the pipe line with which second parties connect their wells.

"The parties of the first part grant the further privileges to the parties of the second part the right of way over and across said premises to the place of operating, together with the exclusive right to lay pipes to convey oil and gas, the

right to remove any machinery or fixtures placed on said premises; and the parties of the first part reserve the right to use and enjoy said premises for the purpose of tillage and all purposes not inconsistent with the objects and purposes of this lease, except such part as may be necessary for the purpose above specified. The second party to lay all pipes deep enough in the ground so as not to interfere with the cultivation of the soil. The second party hereby agrees to pay any damage done to growing crops by the laying of pipes, and to leave the tiling in as good order as same is found.

"In case no well is completed on said premises within twelve months from this date, the parties of the second part shall pay to parties of the first part, as rental, at the rate of one dollar per acre per year, to be paid quarterly at close of the first quarter of each such rental year, counting from the expiration of said twelve months. It is further agreed that in case no paying well is completed on said premises within five years from the date hereof this grant shall be null and void without further agreement of the parties hereto. No well shall be drilled within two hundred feet of any dwelling house or building without a written permit from the first parties.

"The second parties shall have the right to use sufficient gas and water to run all machinery for operating said wells, also the right to remove all its property at any time, but without interference with first parties' water supply. Upon abandonment by second party of the premises, or upon expiration of the rights and privileges of the second parties under the provisions hereof, the second party agrees to execute full release to parties of first part.

"The parties of the second part hereby agree to complete one test well on this block of leases in Martinsville township, Clark county, Illinois, on or before the first day of May, 1905, or forfeit all rights under this lease.

"It is understood between the parties to this agreement that all conditions between the parties hereunto shall extend to their heirs, executors, administrators and assigns.

"If said first well is found productive of either oil or gas, second parties further agree to continue with due diligence on this block of leases in Martinsville township as long as paying wells are found.

"It is agreed that upon the payment of one dollar at any time by the parties of the second part, their successors or assigns, to parties of the first part, their successors or assigns, shall have the right to surrender this lease for cancellation, after which all payments and liabilities thereafter to accrue under and by virtue of its terms shall cease and terminate and this lease shall become absolutely null and void.

"In witness whereof the parties hereunto have set their hands and seals this 27th day of January, 1905.

|  |  |
|---|---|
| J. V. POE, | [Seal] |
| MARY E. POE, | [Seal] |
| CLARENCE ULREY. | [Seal]" |

The instrument was acknowledged by appellants before a notary public and was filed for record in the recorder's office of Clark county. The appellee Ulrey assigned the lease, except a one-sixteenth interest therein, to the Illinois Oil and Gas Company, the other appellee.

On July 10, 1906, appellants filed their bill of complaint in the circuit court of Clark county praying the court to set aside the lease as void on account of want of mutuality, and because it was unfair, harsh and unconscionable, and also on the ground that appellees had failed to comply with the terms of the lease. The answer admitted the execution of the lease, the assignment of an interest to the appellee the Illinois Oil and Gas Company, and averred the performance of their agreements on the part of the appellees. The court heard the evidence and entered a decree declaring the lease null and void, setting the same aside and canceling it as a cloud upon the title of appellants and directing appellees to

deliver up the lease to be canceled. Appellees removed the record by appeal to the Appellate Court for the Third District, and that court reversed the decree and remanded the cause, with directions to the circuit court to dismiss the bill for want of equity.

Counsel for appellants say that because of the great importance of the question of law involved in the case they applied to the Appellate Court for an appeal upon a certificate of importance, which was allowed. The record is here for review in pursuance of an order of the Appellate Court granting an appeal.

The first proposition of counsel for appellants to be noticed is their claim that the Appellate Court had no jurisdiction of the appeal from the circuit court, and that the judgment of the Appellate Court in a case of which it had no jurisdiction should be reversed and the cause should be remanded to that court, with directions to dismiss the appeal. The bill of complaint alleged that the premises were occupied as a homestead by appellants and that the lease did not contain a release and waiver of the right of homestead. The answer admitted the existence of the homestead estate and there was no release and waiver of the right of homestead in the lease or the acknowledgment, but the question of the validity of the instrument on that ground was not raised in the circuit court and there was no finding on the subject. Counsel for appellants say that they did not raise the question nor discuss it in their brief or argument in the Appellate Court and it was not presented in any way to that court. The appellees, who were appellants in the Appellate Court, assigned errors upon the record (not involving the homestead) of which the court had jurisdiction, and the appellants, who were appellees there, joined in error and submitted the cause for decision upon the errors assigned. The freehold estate of homestead was involved in the circuit court under the pleadings, not because the lease of oil and gas was a conveyance of an interest in the homestead, but

because of the rights granted in the surface. Oil and gas
are classed as minerals, and that term is not confined to
metallic substances, but, on account of the wandering and
vagrant nature of oil and gas and their liability to escape
or to be withdrawn to other lands, they are not subject to
absolute ownership. They belong to the owner of the land
under which they are located so long as they remain there,
but when they escape and go under other land the title of
the former owner is lost. The grant of oil and gas is a
grant of such oil and gas as the grantee may find, and he
is not vested with any estate in the oil or gas until it is
actually found. (*Dill* v. *Fraze,* (Ind.) 79 N. E. Rep. 971;
*Ohio Oil Co.* v. *Indiana,* 177 U. S. 190) The lease, how-
ever, gave to the lessee the right to operate on the premises;
to enter upon them at all times for the purpose of drilling and
operating; to erect and maintain all necessary buildings and
structures, and to lay pipes necessary for the production and
transportation of oil and gas. The lease, therefore, was a
conveyance of an interest in the homestead estate, and as
it was of unlimited duration it came within the statute re-
lating to conveyances of such interests. (*Bruner* v. *Hicks,*
230 Ill. 536.) When the case was removed to the Appel-
late Court, however, the parties who were appellees there
might, if they chose, waive the homestead question and per-
mit the Appellate Court to decide the case on the errors as-
signed of which it had jurisdiction, and that is what they
did. They cannot now be permitted to insist that the Ap-
pellate Court had no jurisdiction of a question not raised
but waived in that court.

The first claim on the merits put forward by counsel for
the appellants is, that the circuit court was right in setting
aside the lease for the reason that the one dollar named in
it as a consideration was not, in fact, paid. They say that
courts of equity will always inquire into the real consid-
eration of an instrument, and will set it aside if there was,
in fact, no consideration paid. It is true that for the pur-

pose of applying equitable principles and granting equitable remedies a court of equity will inquire into the real consideration of a contract, although it is under seal and recites a consideration, if the effect is not to impair the instrument as a conveyance. That is done in cases where specific performance of a contract is asked for, (*Crandall* v. *Willig*, 166 Ill. 233,) and other cases resting on like principles. But while the recital of the payment of the consideration in an instrument may be contradicted for such purposes, an acknowledgment of such payment cannot be contradicted by parol for the purpose of invalidating the instrument or impairing its legal effect as a conveyance. (*Stannard* v. *Aurora, Elgin and Chicago Railway Co.* 220 Ill. 469.) The interest of the appellee Ulrey under the lease had been assigned to the appellee the Illinois Oil and Gas Company, with the exception of one-sixteenth, and the purpose of the allegation in the bill and evidence that the one dollar was not, in fact, paid, was to invalidate the lease, which could not be done.

Another ground upon which it is contended that the circuit court came to a correct conclusion is, that there was a want of mutuality between the parties because the lease contained a surrender clause by which appellees were permitted, upon the payment of one dollar to appellants, to surrender the lease for cancellation. It is argued that this provision made the lease a tenancy at will, and also one-sided, harsh, unjust, and therefore void. So far as the charge that the contract was harsh and unjust is concerned, it may be said that the parties were competent to contract with each other, and neither side can be relieved from their agreements on the ground that they did not use good business judgment in entering into the contract. There is no question of fraud and no charge or evidence of fraud in the case, and where parties who are competent in law and in fact to enter into contracts, freely and voluntarily contract with each other, it is of the utmost importance to them, and

the public as well, that their agreement shall be respected and enforced by the courts, and that neither shall be relieved from the obligation of his contract except upon some certain ground deemed valid by the law. The surrender clause in this lease gave to the lessee an option to surrender it before the expiration of the term, but it did not give to the lessors any option to compel a surrender. Such options and contracts are not invalid in the law, (*Thayer* v. *Allison,* 109 Ill. 180,) and they do not create a tenancy at will. (*Brown* v. *Fowler,* (Ohio) 63 N. E. Rep. 76; *New American Oil and Mining, Co.* v. *Troyer,* (Ind.) 77 id. 739.) As the payment of the consideration cannot be disputed for the purpose of invalidating the lease, it must be held that the lessee paid one dollar for the right to explore for oil and gas, and also agreed to do certain things, and was to have the right, upon a further payment of one dollar, to surrender the lease. The circuit court could not rightfully cancel the lease because of that agreement. If the court could do that in any case, it could only be where nothing had been done under the lease, and that was not the case here.

Another ground upon which it is insisted that the circuit court properly set aside the lease is, that the lessee had not performed its conditions on his part. The evidence showed that the appellee Clarence Ulrey was engaged in the business of procuring leases of the same character as this one in the same neighborhood, and procured a block of leases about the same time on twelve farms in the town of Martinsville, including this one. In the spring of 1905, a few months after the lease was made, a test well was drilled on land belonging to A. P. Keith, in Martinsville township, adjoining the land of appellants on the south and about thirty rods from appellants' land. Gas was found, and the well was capable of producing 200,000 cubic feet of gas per day and with 115 pounds rock pressure. There was no market for the gas and no pipe line or other means of transportation to a market, and the well was shot, cased,

tubed, packed ₒand equipped with appliances used in gas wells to pipe gas to market, and was left in that condition, awaiting means of transportation. Another well was drilled to a depth of about six hundred feet on the farm of John McNurland, which cornered with appellants' land, and the well was about eight rods from appellants' line. The McNurland well showed gas, but a flow of salt water was struck which destroyed the value of the well and it was abandoned. The appellants say that the McNurland land was not in the same block of leases, but A. P. Keith, John Carper and Wheeler Baker, all testifying for the appellants, said that it was. The land was at the corner of appellants' farm, and we cannot find anything to justify us in saying that appellants' witnesses were wrong. The test well was completed within the time agreed upon, but no well was completed on appellants' farm within twelve months from the date of the lease, and the appellees exercised their option to pay as rental one dollar per acre per year, to be paid quarterly, and they tendered such rental to the appellants at the end of each quarter and it was refused. The parties agreed upon an amount to be paid as compensation for the rights granted by the lease in case the well should not be drilled upon appellants' land within twelve months, and we do not see how they can be relieved from their contract voluntarily entered into.

Counsel for appellants insist that there was an implied agreement that the lessee would drill wells to reasonably develop the farm for the production of oil and gas, and that the lease could be canceled by the court and the rights under it forfeited for a failure to do so, and that the lease might be forfeited for a failure to drill the well although compensation was agreed upon. The argument would have greater force if the lease had not contained a provision that it could be forfeited for a failure to complete a test well on the block of leases before the first day of May, 1905. That agreement would imply an exclusion of other grounds

233—5

of forfeiture and the agreement for compensation effectually excludes a forfeiture not stipulated for. The remedy for the breach of that contract would be by an action for damages. *Harris* v. *Ohio Oil Co.* 48 N. E. Rep. 502.

The case of *Coffinberry* v. *Sun Oil Co.* 68 Ohio St. 488, confidently relied upon by the appellants on this question, does not sustain their position that a breach of an implied covenant will work a forfeiture of a lease of this kind. The case presented by the petition, which was held to state a good cause of action, was that there was a breach of an expressed provision of a lease and the lessee had for several years refused to drill wells, or permit the plaintiff, or any one for him, to drill and test the balance of the farm, and not only refused to further drill and develop the lands as he had agreed to do, but also refused to protect the exterior lines of the leased premises from several producing oil wells already drilled and in operation on adjoining lands.

It is contended that there was a failure to comply with the terms of the lease which provided that if the first well was found to be productive of either oil or gas, the lessee would continue with due diligence to drill wells in the block of leases as long as paying wells should be found. The drilling of wells on the eleven other farms in the block of leases would probably not be a benefit to the appellants, as there would be a likelihood of withdrawing the oil and gas from under their land for the benefit of others; but, taking the fair interpretation of the agreement to be that the lessee would proceed with due diligence to drill wells on appellants' lands with the other lands, the remedy for a breach of the agreement is not to be found in a forfeiture of the lease but in an action for damages. The evidence in this case was that there was no pipe line into which oil or gas could be delivered; that the land was in what a witness termed "wild cat territory," which he explained to be of a purely speculative nature; that for want of any means of transportation there could be no paying well at the time

if ever so many wells were drilled, and that the expense of drilling wells would not be compensated when there was no way of disposing of the product.

We conclude that the judgment of the Appellate Court was right, and it is affirmed.          *Judgment affirmed.*