(No. 25890.—

THE TEXAS COMPANY *et al.* Appellees, *vs.* M. W. O'MEARA *et al.* Appellants.

*Opinion filed June 13, 1941—Rehearing denied September 10, 1941.*

Farthing, J., dissenting.
Smith, J., took no part.

Virgil W. Mills, Wham & Wham, and Lucius, Buehler & Lucius, (Charles Wham, Edward B. Lucius, and Ralph F. Trenchard, of counsel,) for appellants.

Green & Palmer, and Walter E. Will, (Henry I. Green, Oris Barth, and Enos L. Phillips, of counsel,) for appellees.

Mr. Justice Shaw delivered the opinion of the court:

This litigation originated in the circuit court of Wayne county and was commenced by complaint in the nature of a bill to quiet title and for injunction. The relief prayed for was granted and the defendants have appealed to this court, a freehold being involved. A decision in the case requires construction of certain deeds given by various landowners to the Big Mound Drainage District No. 1 and

the details of those conveyances will be set forth below. The case was disposed of in the trial court on the pleadings so no question of fact is involved.

In the years 1905, 1906 and 1907, the district acquired title to its right-of-way by numerous deeds, all of which were identical, except as to the names of the grantors, the legal descriptions of the lands crossed, and the date of the instrument. These deeds were on printed forms (with the blanks appropriately filled in) as follows:

"This Indenture Witnesseth:

"That ...................... of the County of Wayne and State of Illinois, for and in consideration of the benefits and advantages which may result to the owners of lands in Big Mound Drainage District No. 1, and to myself as one of the said land owners, by the construction of a drainage ditch in said district as now surveyed, and for the purpose of facilitating the construction and completion of said drainage ditch, and in further consideration of One Dollar in hand paid by the Commissioners of Big Mound Drainage District No. 1, do hereby convey, release, relinquish and quit claim to said Commissioners of Big Mound Drainage District No. 1, the right of way One Hundred feet in width, being fifty feet on each side of said drainage ditch as now surveyed, for so much of said drainage ditch as may pass through the following described land, to-wit:

"And, as I believe that the construction of said drainage ditch will be a public benefit to all the land owners of said district as well as a personal benefit to myself, I hereby release and relinquish all claim for damages by reason of the location and construction of said drainage ditch through or upon any or all of the real estate hereinbefore described.

"Witness my hand and seal, this ........day of.............. A. D.......

.................................(SEAL)
.................................(SEAL)"

On December 5, 1938, Big Mound Drainage District No. 1, and sub-district No. 1, of Big Mound Drainage District No. 1, entered into an oil and gas lease with M. W. O'Meara and Charles D. Tate. In at least two respects this lease is peculiar. First, it does not specifically describe

any real estate, but in the blank provided for that purpose says, "all of the real estate, land and lands owned by and belonging to the lessors, and to each of them individually, situated in the County of Wayne and State of Illinois, and containing ...... acres, more or less." Second, it contains none of the usual covenants of warranty. Otherwise, it appears to be a usual producers form of lease, except for a provision for an extension of time for drilling if delay results from "fire, flood, act of God, or by injunction."

About a year after the execution of this lease the legislature passed an act (Laws of 1939, p. 526) whereby the Drainage act of 1879 was so amended as to purport to grant power to the commissioners of any drainage district to lease lands for the purpose of exploring for, drilling or producing oil and to validate any such leases theretofore given. Since this act could not affect the granting clause or legal description contained in deeds executed nearly twenty-five years prior to its enactment it requires no consideration in this opinion.

At the time of the commencement of this suit the Texas Company was the owner of seven oil and gas leases dated in 1936 and 1937, whereby it had acquired the right to go upon various lands crossed by the drainage ditch of the district for the purpose of exploring for and producing oil and gas, and in most, if not all, of these leases, no exception was made as to the right-of-way of the drainage ditch. On December 5, 1938, O'Meara and Tate assigned the lease which they obtained from the district to defendant Strickland in so far as it covered (or was claimed to cover) the following described land:

"Twenty-four hundred (2400) feet off of the west end of the Drainage Canal Right of Way, (the entire width thereof) owned and operated by said Big Mound Drainage District Number One, which Drainage Canal Right of Way runs eastwardly and westwardly and is located near the section line between Sections 28 and 27, on the north and

33 and 34 on the south, Township 2 South, Range 7 East of the 3rd P. M. Wayne County, Illinois."

This assignment reserved an overriding royalty, provided for certain payments to the district out of oil and provided for a delay in drilling if it should be prevented, "by fire, flood, act of God, or by injunction or a suit or suits at law or in equity." The above described lease and its assignment to Strickland are alleged to be clouds upon plaintiff's title to the oil and gas under its various leases, which it was sought to have removed, and as to which an injunction was prayed to prevent Strickland and others from drilling. A temporary injunction was entered on September 1, 1939, which was made permanent by the final decree of April 23, 1940, and by that same decree the oil and gas lease given by the district to O'Meara and Tate was held to be void.

The question for decision here is whether each of the deeds above described conveyed the entire property and estate of the grantors in and to a strip of land 100 feet wide centered along the ditch as surveyed, or whether they conveyed to the districts a right-of-way only.

In *Thompson* v. *Magnolia Petroleum Co.* 309 U. S. 478, 84 L. ed. 624, 60 Sup. Ct. 628, a question of title to fugitive oil and gas underlying a railroad right-of-way was involved in a reorganization proceeding under the Bankruptcy act. The Supreme Court of the United States remanded the cause to the District Court, holding that the question of title was a matter that must be determined by the laws of Illinois and in the courts of this State. The exact wording of the deeds in question does not appear in the opinion of the court, but the question presented was obviously similar to the one now under consideration by us. This opinion was filed in March of 1940, and it is thus apparent that in so far as the Federal courts are concerned it is expected of us that we will rely upon our own laws and precedents. In view of the fact that we have what we consider to be

adequate precedents in our own court for our guidance in the determination of this case we will not enter upon any extended review of the decisions of other courts, State or Federal.

A greater portion of appellants' brief is devoted to citations and argument intended to show that the conveyance in question was "in fee" and the arguments pro and con as to this point are urged by them as determinative of the result. We do not believe this to be true. In *Oswald* v. *Wolf,* 126 Ill. 542, we were, as here, considering a title to a right-of-way. We there pointed out on authority of Blackstone that the word "fee," as meaning an estate of inheritance, is applicable to and may be had in any kind of hereditament, either corporeal or incorporeal. We held that an easement of way is an incorporeal hereditament, not subject to livery of seisin, but subject only to grant; that rights-of-way have attached to them the same idea of duration or quantity of estate as is applied to corporeal hereditaments; that the duration of the estate, or the time for which the enjoyment is to continue forms the quantity of the estate, and hence, if the grant be an estate of inheritance either in hereditaments corporeal or incorporeal, a fee is taken, while if for life only a life estate would be granted.

It is thus apparent that it is unnecessary for us to decide the duration of the estate taken by the drainage district, but only to decide what property was conveyed by a proper construction of the exact wording of the deeds in question. In *Waller* v. *Hildebrecht,* 295 Ill. 116, where we were considering a deed involving an easement we restated the general rule as applied in this court as follows: "In construing instruments of the character of this warranty deed, courts will look to the circumstances attending the transaction, the situation of the parties, the state of the thing granted and the object to be attained, to ascertain and give effect to the intention of the parties. (*Kuecken* v. *Voltz,* 110

Ill. 264; *Goodwillie Co.* v. *Commonwealth Electric Co.* 241 id. 42.") This rule was stated in Illinois as early as 1843 in the case of *Doyle* v. *Teas,* 4 Scam. 202, and has been reaffirmed as recently as 1937 in *Williams* v. *Swango,* 365 Ill. 549. It is to be noted that we are considering the meaning of words having an ordinary meaning rather than technical words having a special and technical meaning such as "heirs" or "heirs of his body." In construing words having a definite legal significance we are limited to the face of the instrument even if the intention of the grantor be frustrated, as in *Duffield* v. *Duffield,* 293 Ill. 300.

In *Truax* v. *Gregory,* 196 Ill. 83, we considered the circumstances surrounding the testator and his family and interpreted the exact words now before us—"the right-of-way." In that case the testator by the third clause of his will devised to his son certain specifically described real estate "with the right-of-way from the highway near my house in section 22 to the said northeast quarter," etc. As to the surrounding circumstances it was shown by the evidence that a public road passed through testator's lands leaving a part on the northeasterly side and the rest on the southwesterly side of the highway, and that his residence and barn were on the lands to the northeast. It appeared that the lands given to the son abutted on the public highway while the lands given to the daughter could only be reached by the private highway in question and that for many years prior to the execution of the will the right-of-way in question had been maintained as such. In the bequest to the daughter the words were used "to be hers absolutely and after my death," notwithstanding those lands were traversed by the right-of-way in question. In that case we held that the words "the right-of-way" carried only an easement, notwithstanding the use of the words "to be his absolutely."

It is a rule of decision in this court that the intention of the parties is the test by which to determine the effect

of deeds, and this applies to the description of the property conveyed as well as to other parts of the instrument. (*Burnotte* v. *DeWitt,* 360 Ill. 518; *Brenneman* v. *Dillon,* 296 id. 140.) The description of the property which the parties intended to convey is the vital point in this litigation and in determining that point, as we have seen by the rules set forth above, we must consider the circumstances and so far as possible place ourselves in the situation of the parties to the deeds which we are considering and construing. We must consider the objects which they wished to attain and the objects which they had in mind, as shown by the deed, as well as those which they did not have in mind and could not attain. These things seem to us rather obvious. The parties knew that they wanted to dig a drainage ditch which they thought would be of benefit to both parties to the deeds and they knew that this ditch would require a right-of-way. They knew, or were presumed to know, that at the time of the execution of these deeds the drainage district could not lawfully engage in the business of drilling for oil and it had no lawful authority other than to construct and maintain a ditch. They knew that the district had no lawful authority to acquire any more property than might be necessary for its corporate purpose nor to use any property which it might acquire for any other purpose. Certainly, so far as the grantee was concerned, it cannot be presumed to have intended to acquire anything more than the law contemplated and permitted for the carrying out of its limited reason and excuse for existence. On the other hand, there is nothing in the deeds to indicate that the grantors had any intention of conveying anything more than that which the district required, needed for its corporate purpose and could lawfully receive without legal question as to its propriety and necessity. Neither of the parties knew that the land was underlaid with oil-producing sands of immense value. Had the existence of such mineral wealth so much as been suspected the deeds would have been

worded with such care, either on the one hand to make sure of its conveyance, or on the other to guard against any such possible construction.

Our conclusion on this point coincides with that of the chancellor—that the parties in using the words "right-of-way" meant exactly what they said and nothing more.

The decree of the circuit court of Wayne county is affirmed.

*Decree affirmed.*

Mr. JUSTICE FARTHING, dissenting.

Mr. JUSTICE SMITH took no part in this decision.