(No. 26401.—

SYLVESTER S. UPDIKE *et al.* Appellants, *vs.* MARK SMITH *et al.* Appellees.

*Opinion filed January 20, 1942.*

SUMNER & LEWIS, for appellants.

LACKEY & LACKEY, for appellees Mark Smith *et al.*; FRED W. GEE, for appellee The Ohio Oil Company.

Mr. JUSTICE FARTHING delivered the opinion of the court:

The plaintiffs, Sylvester S. Updike, Dora A. Bromley and Joanna Mefford, filed their complaint in the circuit court of Lawrence county, admitted the validity of oil leases held by the Ohio Oil Company and prayed that they be found to be the owners in fee simple of all the remaining oil and gas rights in and to the northwest quarter of the northwest quarter of section 36, township 5 north, range 13 west of the second principal meridian in Lawrence county, Illinois, and that the defendants, Mark Smith and Cassie Smith, be found to have no right, title or interest to the oil and gas rights in and under that land. Included was a prayer for an accounting from the defendant, the Ohio Oil Company, for all the oil produced since

March 24, 1934, from 215 acres of land of which the forty acres in question is a part. The chancellor heard the evidence and dismissed the bill for want of equity. The plaintiffs appealed directly to this court since a freehold is involved.

James Updike was the owner of 215 acres of land in Lawrence county. He died leaving as his heirs-at-law his widow, Nancy Updike, and five children, Sylvester S., Warner E., and J. B. Updike, Dora A. Bromley and Joanna Mefford. On February 12, 1906, and May 7, 1909, the heirs-at-law of James Updike executed oil and gas leases of the 215 acres, which leases were owned on January 2, 1912, by the Ohio Oil Company. That company drilled a number of wells on the whole farm, two of which were on the forty acres in section 36 involved in this suit. On October 20, 1920, apparently after the death of Nancy Updike, the five children made voluntary partition of the 215 acres. Each received from his brothers and sisters a deed to an undivided four-fifths interest in a particular tract. In all these deeds the grantors reserved all their oil and gas rights. The northwest quarter of the northwest quarter of section 36 aforesaid, was conveyed to W. E. Updike and on March 14, 1928, he and his wife mortgaged and warranted it to the Citizens Banking Company of Lawrenceville to secure an indebtedness of $1500. There was no reservation or exception of oil or gas underlying the mortgaged land. The mortgage was foreclosed and on March 5, 1934, Emerest Combs obtained a master's deed to the northwest quarter of the northwest quarter of section 36 aforesaid. March 24, 1934, Combs conveyed this 40-acre tract by warranty deed to the defendants, Mark Smith and Cassie Smith. Because of a dispute among the persons who claim to be owners of the royalty interest, the Ohio Oil Company admits it withheld payment of all oil royalties after May 1, 1934. The complaint alleges, and the answer of the Smiths admits, that on November

23, 1934, W. E. Updike made a deed which purported to convey all his oil and gas rights to his sisters and brothers, and that on that day J. B. Updike likewise deeded all his oil and gas rights to the two sisters and his remaining brother, Sylvester S. Updike. By their answer the Smiths say that although W. E. Updike may have made such a deed, he had no interest to convey in the oil and gas underlying the northwest quarter of the northwest quarter of section 36 aforesaid. By its answer the Ohio Oil Company admitted that from the sale of oil produced from the 215 acres which was leased and operated as a single unit it held $1996.03 as royalty accrued after May 1, 1934. This it offered to pay to such persons as the court might direct.

By their complaint appellants alleged and they now contend that "the then owners of the entire fee simple estate in the land, in executing the said deeds, and reserving the oil and gas rights, interests and royalties, thereby severed the oil and gas rights, interests and royalties from said lands, and created separate and distinct interests and estates, in fee simple, in said lands." They say that when their brother, W. E. Updike, mortgaged the 40-acre tract he had received in the voluntary partition, he mortgaged only the surface estate and that therefore that estate alone passed by the master's deed to Combs. Combs could convey no more than he received, so appellants say the Smiths acquired the surface but did not acquire the severed oil and gas rights, interest and estate.

The children of James Updike were tenants in common of the 215 acres. By their conveyances of October 20, 1920, they partitioned the surface but remained tenants in common of the oil and gas. Subject to the leases assigned to the Ohio Oil Company, each owned an undivided one-fifth interest in the oil and gas rights in the 215 acres. When W. E. Updike executed a mortgage on the northwest quarter of the northwest quarter of section 36, he

was the owner of the surface and one of the undivided one-fifth interests just mentioned.

In general, a landowner is entitled to the surface and all that is below it, and where he makes a deed that contains no reservation or exception and does not limit the estate conveyed, he conveys everything under the surface as well as the surface itself. (2 Devlin on Real Estate, (3d ed.) p. 1802; *Richards* v. *Potter,* 136 Ky. 579, 124 S.W. 850.) His legal interest in the oil and gas is accessory to his legal interest in the land and will pass by a grant of the land, unless he expresses an intention to retain that interest. (1 Summers Oil and Gas, (2d ed.) p. 324, and cases there cited.) This court reviewed the cases from other jurisdictions, as well as our own, which involved oil and gas leases of indefinite duration, such as those held by the Ohio Oil Company in the case before us, in *Transcontinental Oil Co.* v. *Emmerson,* 298 Ill. 394, 402.) The conclusion was that the better reasoning, and the majority holdings supported the rule that such an oil and gas lease conveys a freehold interest in the real estate to which it applies. See also *Triger* v. *Carter Oil Co.* 372 Ill. 182, 185, and 29 A. L. R. 586. Oil and gas in place in the earth can not be the subject of an ownership which is distinct from the soil because of their fugacious nature. They belong to the owner of the land so long as they remain under the land, and his grant of them to another is a grant only of such oil and gas as the grantee may find and take possession of, and no title to the oil and gas as such actually vests until it is found and reduced to possession to be used or marketed. (*Watford Oil and Gas Co.* v. *Shipman,* 233 Ill. 9; *Poe* v. *Ulrey,* id. 56; *Triger* v. *Carter Oil Co., supra.*) Clearly where there is a right granted to enter upon the land described in an oil and gas lease for the purpose of prospecting for, discovering and removing oil and gas if found, by means of structures, machinery, pumps, pipes, tanks, etc.,

and where such rights are of indefinite duration, a freehold estate in the land, itself, is conveyed. (*Transcontinental Oil Co.* v. *Emmerson, supra,* and *Triger* v. *Carter Oil Co., supra.*) A landowner may create a separate estate either by a deed such as was considered by this court in the *Triger case, supra,* or by a grant of the land to a third person with an express reservation of the oil and gas. (29 A. L. R. 586.) A testator may devise separate tracts covered by one lease, excepting the oil thereunder, and devise his rights in the oil to all the named devisees as tenants in common. *Conover* v. *Parker,* 305 Ill. 292.

As long as the title to the surface and any part of the oil and gas beneath it remain in the same owner there will not be a complete severance of oil and gas from surface rights. For example, an oil and gas lease of indefinite duration creates a freehold, but does not work a severance.

Sections 6 and 7 of the Mines act (Ill. Rev. Stat. 1941, chap. 94, secs. 6 and 7) provide that a mining right may be conveyed by deed or lease, and, when this is done, a separate taxable estate is created. In *People* v. *Bell,* 237 Ill. 332, this court held that oil and gas deeds and leases are governed by the provisions of this statute. This statute does not provide for a severance of the mineral estate from the surface estate. It provides only for the creation of separate taxable estates.

Since W. E. Updike did not convey all his interest in the oil and gas rights in the forty acres in question before he mortgaged it, there was no severance of his oil and gas interests from his surface interests. By his mortgage deed of March 14, 1928, W. E. Updike pledged all that he owned in the northwest quarter of the northwest quarter of section 36, including his remaining oil and gas rights.

Section 11 of the Conveyances act (Ill. Rev. Stat. 1941, chap. 30, par. 10, p. 761) provides that if a mortgage contains the words "and warrants" as here, it shall be con-

strued the same as if full covenants of seizin, of good right to convey, against encumbrances, of quiet enjoyment and general warranty, expressed in section 9, were fully written therein. By the mortgage, the foreclosure sale, and the master's deed Combs became the owner of the surface of the 40-acre tract and W. E. Updike's undivided one-fifth interest in the oil and gas rights therein, subject, of course, to the Ohio Oil Company's leases. Likewise Mark Smith and Cassie Smith, as his grantees, obtained title to all that Combs owned. Therefore, the plaintiffs received no interest in the oil and gas under the forty acres as a result of the deed of November 23, 1934, from W. E. Updike.

The plaintiffs rely on *Uphoff* v. *Trustees of Tufts College,* 351 Ill. 146; *Big Creek Coal Co.* v. *Tanner,* 303 id. 297; *Renfro* v. *Hanon,* 297 id. 353; *Attebery* v. *Blair,* 244 id. 363, and *Catlin Coal Co.* v. *Lloyd,* 176 id. 275, to sustain their proposition that there was a full and complete severance of the oil and gas rights from the surface rights and that thereby two distinct estates of inheritance were created. Those cases are not in point. In them the court did not consider and pass upon the question of whether a person who owns all the surface of a tract of land and only an undivided interest in the oil and gas which are fugacious or the coal in place will convey only the surface if he conveys by government description and makes no reservation or exception of the oil and gas or coal. For example, in *Uphoff* v. *Trustees of Tufts College, supra,* this court said that a conveyance of the coal and minerals will cause a severance of that estate from the surface estate. However, the controversy there was about the title to an undivided two-thirds of one-half of the coal and minerals which had been conveyed and the court expressly said that no question was raised as to the title to the surface of the lands and the remaining undivided one-half interest in the coal, the title to both of which was in Uphoff. Like-

wise, the controversy in *Big Creek Coal Co.* v. *Tanner, supra,* was over the taxation of certain coal mining rights under sections 6 and 7 of the Mines act, *supra.* For that reason this case is not in point. The contention that plaintiffs and their grantors had made a full severance of the oil and gas rights, and that two distinct estates of inheritance resulted from their voluntary partition deeds, is overruled.

Although plaintiffs' prayer for relief by the removal of a cloud on their title to the oil and gas rights, as against the Smiths was properly denied, still, they prayed for an accounting. However, although the Ohio Oil Company admitted in its answer, and the proof showed it held approximately $2000 which it offered to pay at the court's direction to whomsoever the money belonged, the chancellor ignored all this and dismissed the complaint for want of equity. With these two kinds of special relief was included a prayer for general relief. This court has held that where general and special relief are prayed and the special relief cannot be granted, the court may grant any relief which is consistent with the facts alleged in the bill and proved by the evidence. *Churchill* v. *Marr,* 300 Ill. 302, 311, and cases there cited. It follows that the chancellor erred in failing to grant the prayer for an accounting and in dismissing the complaint for want of equity.

For the reasons stated, the denial of the prayer for the removal of cloud on title is affirmed; the denial of an accounting is reversed, and the cause is remanded for further proceedings consistent with the views herein expressed.

*Affirmed in part, reversed in part*
*and remanded, with directions.*