CHICAGO, WILMINGTON & FRANKLIN COAL CO. et al. v. MINIER et al. (two cases).

Nos. 7811, 7812.

Circuit Court of Appeals, Seventh Circuit.

May 2, 1942.

Rehearing Denied June 9, 1942.

John C. Quilty, of Centralia, Ill., F. C. Love, of Oklahoma City, Okl., Fred H. Kelly and Craig Van Meter, both of Mattoon, Ill., Thurlow G. Essington, of Chicago, Ill., and Roy C. Martin and Carter Harrison, both of Benton, Ill., for appellant Chicago, Wilmington & Franklin Coal Co.

Ralph Lesemann, of East St. Louis, Ill., Matthew E. Murray, of Benton, Ill., and Charles F. Potter, of Houston, Tex., Harold Harrison, Harrison, Murray & Miller, all of Benton, Ill., and Baker, Lesemann, Kagy & Wagner, of East St. Louis, Ill., for appellee Minier and others.

Before EVANS, SPARKS, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

These appeals involve a controversy over the right to produce oil from a tract of land in Franklin County, Illinois. The issues are the proper construction of a deed of conveyance and the determination of the oil interests created.

The complaint affirmatively shows the existence of diversity of citizenship and the requisite jurisdictional amount. Essentially it seeks an adjudication that the right to the oil is in the plaintiffs.

On March 16, 1914, the deed in question was executed. (Its material portions appear in the margin.[1]) The grantor was John P. Minier, a farmer, who has lived upon the land with his family and continually cultivated it from before 1914 to the present date. His grantee was Walter W. Williams, a practicing attorney, and it was Williams who drew this deed which Minier executed.

In 1918 Williams conveyed all the coal, oil and gas underlying the land to the Chicago, Wilmington & Franklin Coal Company, one of the plaintiffs, and from 1919 to 1928 inclusive the Coal Company paid the taxes separately assessed against the minerals underlying the land. On September 6, 1940, that Company executed an oil and gas lease to one Adkins, who, in October 1940, assigned the lease to the Shell Oil Company, the other plaintiff.

In September, 1924, the shaft used for the purpose of removing the coal from under the premises was completed, but no portion of the surface of land was selected and paid for by Williams or the Coal Company.

After a hearing, the District Court made special findings of fact, stated its conclusions of law thereon, and entered a decree. Its decision was that the deed of convey-ance vested in the plaintiffs, without limitation or restriction, all of Minier's interest in the coal, oil, and gas underlying the land and that the defendants were without interest in the minerals and had no right to produce them. But it was further ordered that in September, 1926, two years after the shaft was sunk, the plaintiffs had forfeited and lost all their rights to use the surface in drilling for and producing oil. 40 F.Supp. 316. To reverse this decree both plaintiffs and defendants have appealed.

The initial problem is whether the provisions in the deed, requiring surface rights to be exercised and paid for within the time provided, are applicable to the right to use the surface for the production of oil and gas upon the land.

■ Our task in construing the covenant is to effect, if possible, the intention of the parties. Brenneman v. Dillon, 296 Ill. 140, 147, 129 N.E. 564; Texas Co. v. O'Meara, 377 Ill. 144, 150, 36 N.E.2d 256. "We must consider the circumstances and so far as possible place ourselves in the situations of the parties * * *. We must consider the objects which they wished to attain and the objects which they had in mind, as shown by the deed, as well as those which they did not have in mind and could not attain." Texas Co. v. O'Meara, supra, 377 Ill. page 151, 36 N.E. 2d page 259; Kuecken v. Voltz, 110 Ill. 264; Goodwillie Co. v. Commonwealth Electric Co., 241 Ill. 42, 89 N.E. 272.

[1] "The Grantors, John P. Minier and Rosa M. Minier, his wife, * * *, for and in consideration of the sum of ($6280) Sixty Two Hundred Eighty Dollars, in hand paid, Convey and Warrant to Walter W. Williams * * *, all the coal, oil and gas underlying [describing the land].

\* \* \* \* \* \*

"Together with the right to mine and remove said coal, oil and gas free and clear of any liability for damages for surface subsidence or otherwise to the owner of the superincumbent soil caused by mining out the coal, oil or gas * * *. It is also covenanted and agreed that the Grantee herein, his heirs and assigns, shall have the right to take and use so much of the surface of said land as may be deemed necessary for the purpose of erecting, maintaining and operating, hoisting, air, pumping and escape shafts, drains, ditches and reservoirs, telephone and electric light and Power wires and the necessary roadways and railroad tracks to and from the same, with the right-of-way for any railroad necessary or required to carry said coal, oil and gas to market, but all the land the surface of which is so taken shall when occupied be paid for at the rate of One Hundred ($100.00) Dollars per acre.

"It is understood that within two years after the Mine shaft intended to be used for the purpose of removing the coal from under the premises herein is completed all the surface privileges above set forth that the Grantee herein desires to exercise shall, either for Mine switches or for whatever purpose, be selected and paid for and the Grantor herein will execute a deed therefor, the surface privileges on the remainder of said land shall at the end of said two years be fully released and the right of the Grantee herein to take any portion of the surface of the remainder of said lands is at an end.

\* \* \* \* \* \*

"Dated this 16th day of March, A. D. 1914.

"(Signed) John P. Minier (Seal)
"(Signed) Rosa M. Minier (Seal)"

 The District Court held that the controversial covenant was a limitation upon the grantee's right to use the surface of the land in removing the underlying oil and gas. We appreciate the force in the contrary analysis of the plaintiffs, but believe the interpretation reached below to be the more persuasive. It must be remembered that to the grantor the value of the surface was as farm land. When he conveyed his rights to the gas, oil and coal, Minier did not part with the soil which gave him his livelihood. There is no doubt that the purpose of the covenant was to prevent the agricultural surface from being swallowed up by surface activities equally as incident to the removal of oil and gas as of coal; the value of the land for agricultural use was not to be taken from the farmer grantor without the payment of added compensation. Perhaps there are infirmities in the covenant which, when viewed in isolation and not in regard to the whole, seem inconsistent with the accepted interpretation, but that is so in most cases of construction. And even if we were of the opinion that under all the circumstances the opposing interpretations were equally sound, the result would be no different, for the grantee drew the deed and any ambiguities would be resolved against him. McClenathan v. Davis, 243 Ill. 87, 91, 90 N. E. 265, 27 L.R.A.,N.S., 1017 and McConnaughy v. Gage, 252 Ill.App. 17, 22.

 To be sure, ordinarily the conveyance of the interest in coal, oil and gas would carry with it the implied right to enter upon the grantor's land and to use so much of it as necessary for the full enjoyment and benefit of the property granted. Threlkeld v. Inglett, 289 Ill. 90, 124 N.E. 368. But clearly that right may not be implied, when the parties by their agreement have limited the surface privileges.

There remains the ultimate question of whether the plaintiffs have any property interest in the oil and gas underlying the land in which they no longer have surface rights.

 The law of Illinois is settled that oil and gas in place are minerals, but because of their fugacious qualities can not be the subject of an absolute ownership. These minerals belong to the owner of the land only so long as they remain under it and if he makes a grant of them to another, it is only a grant of such oil and gas as the grantee may find and take from the earth. No title to these minerals as such vests until they are reduced to possession. Watford Oil Co. v. Shipman, 233 Ill. 9, 12, 84 N.E. 53, 122 Am.St.Rep. 144; Poe v. Ulrey, 233 Ill. 56, 62, 84 N.E. 46; Ohio Oil Co. v. Daughetee, 240 Ill. 361, 367, 88 N.E. 818, 36 L.R.A.,N.S., 1108; Triger v. Carter Oil Co., 372 Ill. 182, 185, 23 N.E. 2d 55; Updike v. Smith, 378 Ill. 600, 604, 39 N.E.2d 325, and the right to them will not support ejectment or any other real action. Watford Oil v. Shipman, supra; Carter Oil Co. v. Liggett, 371 Ill. 482, 21 N.E.2d 569.

Such is the law, whether the oil and gas themselves are conveyed, cf. Poe v. Ulrey, supra, or the grant is to enter and prospect for them, cf. Bruner v. Hicks, 230 Ill. 536, 82 N.E. 888, 120 Am.St.Rep. 332. Yet, it is of little practical moment that there can be no absolute ownership of oil and gas in place. In the courts, rights in oil and gas are nevertheless recognized and their incidents are no less real because Illinois does not accept the concept of absolute ownership. For example:

 Sections 6 and 7 of the Mines Act[2] provide that a mining right may be conveyed by deed or lease, and when that is done, a separate taxable estate is created. Oil and gas leases are governed by the statute and are accordingly taxed. People v. Bell, 237 Ill. 332, 86 N.E. 593, 19 L.R.A.,N. S., 746, 15 Ann.Cas. 511. Likewise, leases are considered corporeal property for the purposes of the state franchise tax and a lessee corporation must include their value in the total amount of its tangible property. Transcontinental Oil Co. v. Emmerson, 298 Ill. 394, 131 N.E. 645, 16 A.L.R. 507.

 When a right is granted in an oil and gas lease to enter upon the land for the purpose of prospecting for oil and gas, and removing them by means of structures, pipes, etc., constructed upon the surface, a freehold estate in the land itself is created, if the rights are of indefinite duration. Bruner v. Hicks, supra, 230 Ill. page 542, 82 N.E. 888, 120 Am.St.Rep. 332; Watford Oil Co. v. Shipman, supra; Triger v. Carter Oil Co., supra. But it does not work a severance, for as long as title to the surface and any part of the oil and gas beneath it remain in the same owner, there will not be a complete severance of oil and gas from surface rights. Accordingly,

---

2 Ill.Rev.Stat.1941, chap. 94, §§ 6, 7.

there is not a severance even when the individual surface owner's rights in the oil and gas are only an undivided interest. Updike v. Smith, supra.

Of course the severance of the oil and gas from the surface rights is recognized. A land owner may create a separate estate by deed, Triger v. Carter Oil Co., supra, or by a grant of the "surface only" to a third party, which conveyance reserves in the grantor the right to the oil and gas beneath the surface. Shell Oil Co. v. Manley Oil Corp., 7 Cir., 124 F.2d 714. And a testator whose land is covered by one lease may devise separate tracts of land, except the underlying oil, and devise rights in it · to all the named devisees as tenants in common. Conover v. Parker, 305 Ill. 292, 137 N.E. 204.

These recognitions of property in oil and gas determine the rights of the individuals in the fugitive minerals underlying the land: they fix what one individual may do and what another one may not. It is for these incidents that parties bargain, not for titular "absolute ownership" of the oil and gas in place.

In our case, it is clear that Minier conveyed to Williams, without limitation or restriction all of his rights in the oil and gas beneath the land. The granted right was in fee and it was not forfeited when the grantee lost all of his rights to the surface. He is entitled to this interest against the owner of the surface, as well as against strangers to the tract. Accordingly the judgment of the lower court is affirmed.