**RAMSEY et al. v. CARTER OIL CO.**

No. 9587.

United States Court of Appeals Seventh Circuit.

Feb. 9, 1949.

Rehearing Denied March 7, 1949.

William M. Acton, of Danville, Ill., and Harry L. Arnold, of Mattoon, Ill., and Walter Davison, of Tulsa, Okl. (Acton, Acton, Baldwin & Bookwalter, of Danville, Ill., of counsel), for appellant.

Charles Wham and John P. Wham, both of Centralia, Ill., Robert G. Burnside, of Vandalia, Ill., and William B. Wham, of Centralia, Ill., for appellees.

Before KERNER, Circuit Judge, and BRIGGLE and DUFFY, District Judges.

KERNER, Circuit Judge.

Defendant by this appeal seeks to reverse a judgment enjoining and restraining it from converting a specific oil well located on plaintiffs' property into a repressure well as long as the well is producing oil in paying quantities and as long as it is reasonably required for the protection of plaintiffs' property against offset drainage by producing wells located upon adjacent premises.

From the pertinent facts it appears that with the exception of one-half of the coal and mineral rights underlying the east twenty acres which were owned by one Leavy, plaintiffs owned in fee simple a tract of forty acres of land in Fayette County, Illinois. Plaintiffs and Leavy executed separate oil and gas leases on their respective interests with the defendant, and subsequently, in 1939, plaintiffs and Leavy executed an agreement with the defendant which provided that the tract be "communitized" and operated as one unit; and that the parties share in the royalties from the proceeds of the sale of the oil in the proportion of the land owned by them. Defendant drilled four wells on the "communitized" tract and placed one well approximately in the center of each quarter of the tract. The evidence showed that at the time of the trial, while each of the wells was producing oil in commercial quantities, these quantities were decreasing. The court found as a fact that the continued operation of each of the wells was essen-tial to the proper production of oil from plaintiffs' premises, and that defendant owned and operated leases covering lands adjacent to plaintiffs' on the east, the south, and the west, in such a manner as caused oil to drain from plaintiffs' premises except as the oil was prevented by the operation of all the producing wells as offsets on plaintiffs' premises. The court also found that one of the reasons for the decline of oil production was the exhaustion of gas in the reservoir energy; that the defendant in an effort to increase oil production became a party to a repressuring program which covered approximately one thousand acres of land and which included plaintiffs' land; that this repressuring program was customarily used by operators in their efforts to increase the recovery of oil; that in regard to plaintiffs' land, under the repressuring program defendant proposed to convert the oil producing well in the northwest quarter into a gas input well which would cause production in the three remaining wells ultimately to be greatly increased to the benefit of the parties herein.

This is a suit in equity in which Leavy did not join plaintiffs, and the problem is one of resolving two apparent and opposing theories of the rights of the parties under their lease. In his memorandum opinion, 74 F.Supp. 481, the District Judge recognized it when he stated at the outset: "Implicit in this oil lease is an obligation on the part of the lessee to use reasonable diligence to develop the demised premises so long as the enterprise can be carried on at reasonable profit. * * * Implied also is a covenant that the lessee will by appropriate measures protect the leasehold against drainage by offset wells."

Under the defendant's program, a producing well which offsets and prevents drainage of oil from the plaintiffs' land is to be replaced by a gas repressuring well.

Defendant contends the general rule is that as it has the responsibility of operating the lease it has the authority to direct the method of operation which is qualified only in that it must act as a prudent operator and for the benefit of both the lessor and the lessee. It argues that the proposed plan of repressuring is not only a feasible

program but that it, as the court found, is in common usage among oil operators, and that the experts called by both sides were not in disagreement as to its propriety. It concedes that replacing a productive and offset well with a gas input well will cause migration of oil from the plaintiffs' land, but it argues that by plaintiffs' admission under the repressuring program the oil production will be increased a minimum of 34,000 additional barrels and a maximum of 110,000 additional barrels. To this it points as proof of its proposed prudent operation and the absence of damage to plaintiffs. While the foregoing general statement is sound and the argument is persuasive, it is not determinative of this case.

The deciding factor of this appeal, and the issue on which the parties are in disagreement, is whether plaintiffs are the owners of the underground oil on their premises. The District Court held that it belongs to plaintiffs and that a method which forces the oil to migrate to another's land is an invasion of specific property rights. Defendant argues that this holding is in direct conflict with Jilek v. Chicago, Wilmington & Franklin Coal Co., 382 Ill. 241, 47 N.E.2d 96, 146 A.L.R. 871.

In that case the question before the court was whether an owner of land in fee simple could convey to another the right to take or own the oil in the ground by a mineral deed without executing a conveyance at the same time of the surface estate. From the facts it appeared that the original grantor had conveyed all of the coal, oil, gas and other minerals to one grantee, and subsequently had conveyed the land by the same description to another with the exception of the minerals. The contention was made by a remote grantee to the surface estate that while solid minerals are conveyed with the underlying mineral estate, nonsolid minerals such as oil and gas,

because of their wandering character, are rights which remain affixed to the surface estate. The court held that oil and gas are minerals, and consequently that they belong to the mineral estate and are not part of the surface estate. In discussing the relationship of oil in the earth with the owner of the estate it quoted with approval from Gray-Mellon Oil Co. v. Fairchild, 219 Ky. 143, 292 S.W. 743, 745, a statement that because oil is of a fugitive character, the owner in fee "does not own a specific cubic foot of * * * oil * * * under the earth until he reduces it to possession." [382 Ill. 241, 47 N.E.2d 100.] We interpret this to mean that the owner of the land has title to the oil in the ground, but because of the character of oil he does not own ten, twenty or one thousand barrels or any specific amount of the underground oil until he drills for it and actually reduces to his possession a certain specific quantity of oil.

Ownership of specific quantities of the underground oil is not the problem in this case. Moreover, both of the cases noted above unequivocally stand for the legal proposition that oil is a mineral and part of the underground land. Examination of further applicable Illinois cases does not as defendant states in its brief "merely hold that * * * plaintiffs have the right to control the search for the oil and gas," but confirms the foregoing rule. Updike v. Smith, 378 Ill. 600, 604, 39 N.E.2d 325; Watford Oil and Gas Co. v. Shipman, 233 Ill. 9, 84 N.E. 53, 122 Am.St.Rep. 144; Poe v. Ulrey, 233 Ill. 56, 84 N.E. 46; and Triger v. Carter Oil Co., 372 Ill. 182, 23 N.E.2d 55. It is clear that if not enjoined the defendant will interfere with plaintiffs' property rights. Accordingly, the judgment of the District Court must be affirmed. It is so ordered.