362 P.2d 202 (1961)
BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF LOGAN and State of Colorado, Plaintiff In Error,
v.
Glenn MORRIS and Conrad Luft, Jr., Shell Oil Company, a corporation, the Federal Land Bank of Wichita, Intervenor, Defendants in Error.
No. 19323.
Supreme Court of Colorado. In Department.
May 29, 1961.
Karl C. Falch, Sterling, J. Fred Schneider, Denver, for plaintiff in error.
Kreager, Sublett & Dowis, Sterling, for defendants in error, Glenn Morris and Conrad Luft, Jr.
No appearance for defendants in error Shell Oil Co., and The Federal Land Bank of Wichita.
SUTTON, Justice.
The parties appear in reverse order to their appearance in the trial court and will be referred to by name.
Two Logan County farm owners, Morris and Luft, brought suit against the County Commissioners of Logan County for a declaratory judgment and an adjudication of rights to certain real property stemming from three deeds executed by plaintiff's predecessors in title in the year 1917. These were on forms of conveyance prepared by the county for the purpose of constructing a highway. The instruments, each identical in form, conveyed "a strip of ground" 30 feet wide and one-half mile long to Logan County for a consideration of $1. No road has been constructed thereon to the date of this suit.
In 1952 the county executed oil and gas leases of the strip of ground described in the right-of-way instruments to Shell Oil Company, which appeared below only as stakeholder. Shell does not appear in the proceeding on error, being satisfied to pay accumulated royalties to whomsoever the court shall direct. The Federal Land Bank *203 of Wichita intervened as plaintiff in the trial court but is not a party here. Morris and Luft in their complaint alleged that the deeds in question conveyed only an easement over the strips of ground; that the county was wrongfully asserting ownership of the minerals thereunder and that the Shell Company was wrongfully withholding from plaintiffs royalty money from the production of oil and gas therefrom.
Trial was to the court upon an agreed statement of facts, resulting in findings that the instruments involved did not convey any right, title or interest in or to the oil and gas and that the leases executed by the county to Shell were void. Prayer for damages was withdrawn by the plaintiffs and by agreement of all parties to the action, the court limited its judgment to the above ruling.
The sole question to be determined upon this writ of error is whether the deeds to the county conveyed an easement only or a fee simple title to the strips of land involved.
Counsel for the county urges that the language used in the body of the deeds, both in the granting and habendum clauses, grants a fee simple absolute title as to the surface and underlying minerals. They cite as authority Radetsky v. Jorgensen (1922), 70 Colo. 423, 202 P. 175; and Switzer v. Board of County Commissioners of Chaffee (1922), 70 Colo. 563, 203 P. 680, neither of which are applicable to these facts.
Morris and Luft rely primarily on Leadville v. Bohn Mining Co. (1906), 37 Colo. 248, 86 P. 1038, 1039, 8 L.R.A.,N.S., 422, and on the recent decision of North Sterling Irrigation District v. Knifton (1958), 137 Colo. 40, 320 P.2d 968.
In the Leadville case a landowner had filed a plat dedicating and conveying to the city "* * * as public property, the streets and alleys * * *." The statute then in effect (Sec. 2647, Genl.Laws 1877) provided that "All avenues, streets, alleys, parks, and other places designated or described as for public use on the map or plat * * *, shall be deemed to be public property, and the fee thereof be vested in such city or town." A dispute arose as to who owned the minerals lying under the streets and alleys in question. It was held that the terms used did not mean land and that the legislature did not intend the term "fee" in its technical sense, but intended to vest in the city title only to so much of the street as was necessary to construct and maintain streets, sewers and so forth. The court's holding was that the city's interest was limited by the purpose of the grant notwithstanding the broad language of the statute. The court concluded:
"It seems clear to us, therefore, that the intent and purpose of our statute is to clothe the city in its governmental capacity with the entire title to the streets, as such, for public use, and not for the `profit or emolument of the city.' It was plainly the intention of the dedicator to part with the title to so much of its property only as was necessary to effectuate the purpose of establishing certain streets and alleys designated and described upon the plat for public use, and to clothe the city with the absolute title thereto for that purpose only, and not to vest it with any estate or interest in the ores that may exist thereunder."
In North Sterling the facts are almost identical to those now presented. There a farm owner had conveyed to a water district, by an instrument entitled "Right of Way Deed," a strip of "ground" for the purpose of constructing and maintaining a ditch. A dispute arose between the parties as to the ownership of the fee simple title and who was entitled to the mineral rights therein, the property having become valuable because of oil discovery and production. The issue there, as here, turned upon the construction of a form deed drawn and prepared by the grantee.
One of the exhibits here is the original deed involved in North Sterling supra. The language of the granting clause there is almost identical to the instant deeds, the pertinent parts being: "* * * in *204 consideration of the sum of sixty dollars, to me in hand paid, the receipt whereof is hereby acknowledged, do hereby grant, bargain, sell and convey unto the North Sterling Irrigation District, its successors and assigns, the following described Real Estate lying, being and situate in * * * towit: * * * for the Inlet Canal of The North Sterling Irrigation District, over, across and upon the East ½ * *."
The only major differences in that deed and the instrument before us are the consideration, the words "over, across and upon," written into the description of the strip and a printed provision for the erection of a snow fence to protect the ditch.
In North Sterling the court quoting from Percifield v. Rosa, et al. (1950), 122 Colo. 167, 220 P.2d 546, stated:
"* * * the paramount purpose in construing a deed is to ascertain the intention of the parties, and this is to be gathered from a consideration of the deed itself, if possible, rather than from isolated clauses found therein.";
and then went on to say:
"It is apparent from the face of the deed that the parties did not intend to include `land,' for the word `ground' is used. * * * The deed is upon a printed form obviously prepared for, and used by, the District in acquiring rights of way for its canals, and the language adopted shows definitely that the parties, certainly the grantee, intended something less than a fee simple title. By its wording the deed itself construes the grant as being a `Right of Way'." [137 Colo. 40, 320 P.2d 970]
In Texas Co. v. O'Meara (1941), 377 Ill. 144, 36 N.E.2d 256, 259, cited with approval in North Sterling, the Illinois court in a similar case recognized that the description of the property which was intended by the parties to be conveyed as the vital point in the case and determinative of that issue. This court quoted from the Texas Co. opinion the following:
"* * * we must consider the circumstances and so far as possible place ourselves in the situation of the parties to the deed which we are considering and construing. We must consider the objects, which they wished to attain and the objects which they had in mind as shown by the deed, as well as those which they did not have in mind and could not attain. These things seem to us rather obvious. The parties knew that they wanted to dig a drainage ditch which they thought would be of benefit to both parties to the deeds and they knew that this ditch would require a right-of-way * * *, there is nothing in the deeds to indicate that the grantors had any intention of conveying anything more than that which the district required, needed for its corporate purpose and could lawfully receive without legal question as to its propriety and necessity. Neither of the parties knew that the land was underlaid with oil producing sand of immense value * * *."
In North Sterling the court concluded:
"We think it manifest from this record that when the District presented to John DeSutto a printed form clearly labeled `Right of Way Deed' both parties were cognizant of the need for an easement only and that Mr. DeSutto and the District interpreted the instrument according to its label and the needs of the parties."
and from Chicago, R. I. & P. R. Co. v. Olson, 222 Ark. 828, 262 S.W.2d 882, 884, the following pertinent language was quoted:
"Looking at the whole instrument involved herein, its title, the nominal consideration recited, the shape of the tract conveyed, and the recited purpose of its use, it seems apparent to us that it was the intention of the parties to convey an easement rather than a fee."
We think the reasoning of the Leadville and North Sterling cases and the authorities cited therein are sound. It would indeed be a strained construction *205 here to assume that the parties, when bargaining for a right-of-way for highway purposes, intended at the time of grant that the county would go into the oil producing business on these lands. Nothing more was needed for road purposes than an easement; indeed, normally nothing more could be done with such a narrow strip of rural land. The purpose and intent of the parties to a conveyance when made, is not altered by the subsequent discovery of valuable minerals thereon. Moreover a county has no authority to hold land or any interest therein for investment or speculation, or to retain property lawfully acquired for use of the county when the use therefor no longer exists. Farnik v. Board of County Commissioners of Weld County (1959), 139 Colo. 481, 341 P.2d 467.
Viewing the instruments before us, the titles used, the obvious objective of the parties, the nominal consideration, the shape of the tract conveyed, the stipulated purpose of its use, the party drawing the instrument with its probable superiority of knowledge in such matters, the use of the term "ground" rather than "land," and that the County could acquire this ground only for a public purpose, it becomes apparent that only an easement was intended by the parties.
Defendants next urge that no words of limitation appear in the granting and habendum clauses of the instruments. In this they are correct. They cite C.R.S. `53, 118-1-7 which provides that where an estate in land is conveyed without words of inheritance it shall be deemed to be a fee simple estate of inheritance if a less estate is not set forth by express words or does not appear to be granted by operation of law. The answer to this is that the word "deemed" shows that only a rebuttable presumption is intended. Cf. Kleppe v. Odin TP., McHenry County, et al. (1918) 40 N.D. 595, 169 N.W. 313. Where, as here, the evidence is that no fee simple title was intended to be granted the statutory presumption is overcome.
We conclude that the trial court was correct in its finding that the instruments involved granted only an easement and do not convey any right, title or interest in or to the oil and gas or other minerals under the property therein described.
The judgment is affirmed.
HALL, C. J., and DOYLE, J., concur.