(No. 35325.—

DAVID MURBARGER *et al.,* Appellants, *vs.* JOSEPHINE FRANKLIN *et al.,* Appellees.

*Opinion filed January 22, 1960.*

TOLLIVER, BAYLER & RICKELMAN, of Louisville, and CONGER, ELLIOTT, GOEBEL & ELLIOTT, of Carmi, for appellants.

WINELAND & TODD, of Flora, for appellees.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Clay County which adjudicated title to the oil and gas in and under a 31-acre tract of land. A freehold is involved to give us jurisdiction upon direct appeal. *Miller* v. *Ridgley,* 2 Ill.2d 223.

On March 17, 1942, David Murbarger was the owner of the land in question and was also the father of eleven children. On that date, joined by his wife, he executed a series of mineral deeds conveying to each of seven children an undivided 1/22 interest in the oil and gas under and above the land "for a period of fifteen (15) years or as

long as oil, gas, petroleum distillates or either of them are produced on the property." Thereafter, on September 24, 1942, a similar deed conveyed an undivided 1/22 interest in the oil and gas to another child, and on May 24, 1944, three mineral deeds were executed conveying an undivided 1/22 interest to each of the three remaining children. The four deeds in the second series were also for a term of 15 years, or as long as oil and gas were produced on the property. Neither oil nor gas was being produced at the time either series of deeds was executed.

By warranty deed dated April 12, 1949, David Murbarger and his wife conveyed the tract to Baldy and Josephine Franklin, as joint tenants, the only reservation in the deed being that the grantors reserve "the undivided one-half interest in all oil and gas in and under that may be produced from the premises for ten (10) years from this date." Baldy Franklin died May 5, 1951, and Josephine Franklin, as the surviving joint tenant, became sole owner of the estate conveyed by the deed.

Seven years after the deed to the Franklins, on September 17, 1956, Murbarger, his wife and the eleven children executed an oil and gas lease to James F. McCollum, who started drilling and subsequently commenced the production of oil, which continues at the present time, on April 19, 1957. The arguments to this court concede that the 15-year term of the first series of deeds, conveying 7/22 interest, had expired before production commenced. Controversy arises, however, as to whether such 7/22 interest vested in Josephine Franklin or David Murbarger at the end of the term, and as to who will be the owner of the 4/22 oil-and-gas interest conveyed by the second series of deeds once the production of oil or gas is terminated.

Based upon a finding that the warranty deed from David Murbarger to the Franklins neither reserved nor excepted any part of the 11/22 interest conveyed by the mineral-term deeds to the children, the circuit court found that Josephine

Franklin was the owner in fee simple of the 31-acre tract, subject to the following: (1) an estate for years in David Murbarger, his heirs and assigns, in an undivided one-half of the oil and gas for a period of 10 years dating from April 12, 1949, said estate to vest in Josephine Franklin, her heirs or assigns at the conclusion of the 10-year period; (2) an oil and gas lease in favor of James F. McCollum, his heirs or assigns, and (3) an undivided 1/22 interest in each of the four Murbarger children who were grantees in the last series of mineral deeds, for so long as oil, gas or petroleum distillates are produced from such property, the said undivided 4/22 interest to vest in Josephine Franklin when production terminates.

David Murbarger and certain of his children prosecute this appeal insisting that the former, at the time of his deed to the Franklins, had only a possibility of reverter in the 11/22 interest conveyed by the term mineral deeds to his children, and that, by virtue of section 1 of the act of 1947 relating to rights of entry, (Ill. Rev. Stat. 1947, chap. 30, par. 37b,) such interest was inalienable. Appellees, who are Josephine Franklin, McCollum and the oil company which is purchasing the oil being produced, contend, as the court found below, that the reversionary interest created by an oil-and-gas grant, whether it be by lease or term deed, may be transferred by devise or conveyance and vests in a grantee of the land unless expressly reserved.

It is the settled law of this State that oil and gas in place are minerals but by reason of their fugacious qualities they are incapable of ownership distinct from the soil. (*Conover* v. *Parker*, 305 Ill. 292.) They belong to the owner so long as they remain under the land, and if an owner makes a grant of them to another by lease, (*Watford Oil and Gas Co.* v. *Shipman*, 233 Ill. 9,) by mineral deed, (*Triger* v. *Carter Oil Co.* 372 Ill. 182,) or mineral deed for a term, (Summers, Oil and Gas, vol. 1A, p. 281,) it is a grant only of the oil and gas that the grantee may take

from the land, as well as the right to enter upon the land for the purpose of prospecting and operating wells. No title to it vests in the grantee until it is actually removed from the ground, thus oil and gas in the earth cannot be subject to an ownership distinct from the soil so long as they remain in the earth. (*Updike* v. *Smith,* 378 Ill. 600; *Triger* v. *Carter Oil Co.* 372 Ill. 182.) They belong to the owner of the land as long as they remain under the land. (*Miller* v. *Ridgley,* 2 Ill.2d 223; *Transcontinental Oil Co.* v. *Emmerson,* 298 Ill. 394.) In general, a land-owner is entitled to the surface and all that is below it, and when he makes a deed that contains no reservation and does not limit the estate conveyed, he conveys every-thing under the surface as well as on the surface itself. His legal interest in the oil and gas is accessory to his legal interest in the land and will pass by a grant of the land, unless he expresses an intention to retain that interest. *Miller* v. *Ridgley,* 2 Ill.2d 223; *Updike* v. *Smith,* 378 Ill. 600; Summers, Oil and Gas, vol. 1, p. 324.

When the foregoing principles are applied to the present case, it is manifest that David Murbarger, at the time of his warranty deed to the Franklins, held fee simple title to the land, including the oil and gas in place, subject only to the term mineral deeds granting to the children an 11/22 interest in oil and gas taken from the premises during the term. The grantor made no reservation of his title to the 11/22 of the oil and gas in place, as was his privilege, thus we agree with the circuit court that such title was conveyed to the Franklins, subject only to the rights found by the court to have accrued to the grantees of the term mineral deeds when oil or gas was actually removed from the land.

Appellants' contentions to the contrary rest largely upon the case of *Deverick* v. *Bline,* 404 Ill. 302, wherein a state-ment was made that a reversionary right remaining in one who executes a lease for oil and gas is a possibility of reverter which is incapable of alienation or devise. While

it is the opinion of this court that this statement was both *obiter dictum* and inconsistent with the ultimate result reached in the case, it is enough to point out that, regardless of what appellation may be applied to the interest remaining in the lessor or term grantor of oil and gas, this court has consistently held that such reversionary interests are alienable and, to such extent, has in effect refused to apply the common-law rule to the contrary. (See: *Conover* v. *Parker,* 305 Ill. 292; *Updike* v. *Smith,* 378 Ill. 600; *Miller* v. *Ridgley,* 2 Ill.2d 223.) Any change in position at the present time, we believe would produce absurd results and be harmful to the titles to the oil properties in this State. An owner of land subject to an oil-and-gas lease or term deed would be unable to devise or convey, even to members of his own family, and purchasers would be discouraged from acquiring the title to mineral interests under lands subject to a lease.

It seems clear that the principles applicable to the law of oil and gas, while well settled in that particular field, are hard to dovetail into the rules governing real estate generally. Professor Summers expresses this thought in Volume 1A of his work on Oil and Gas (Perm. Ed.) sec. 382, pp. 375-382, where he points out in considerable detail the difficulty of fitting the interest of an oil-and-gas lessee into the common-law classifications relating to ordinary surface estates. Speaking of the interest of an oil-and-gas lessee, he writes, page 382: "There seems to be no common-law name for such an interest and no useful or practical purpose is served by attempting to fit such interest into the common-law scheme of things. Perhaps sometime courts and legislatures will recognize the fact that oil and gas leases are different from other forms of contracts and conveyances, and that the interests created by them cannot be properly classified under common interests in property, and will speak of such interests as the interest of an oil and gas lessee, as most of them now speak of a mortgagee's

interest, after centuries of trying to call it something else."

For example, a possibility of reverter in an ordinary surface estate arose at common-law where the grantor had conveyed the fee and no estate was left in him other than the possibility of getting the fee back at some remote future date. (*North* v. *Graham,* 235 Ill. 178, 180-2.) When an attempt is made to fit a lease or grant of oil and gas into this concept, however, we run into the familiar proposition that oil and gas while in the earth, unlike solid minerals, cannot be the subject of a distinct ownership from the soil. A grant of the oil and gas is a grant, not of the oil that is in the ground but "to such part thereof as the grantee may find." Title to the oil and gas does not pass to the grantee until it is actually removed from the ground. (*Conover* v. *Parker,* 305 Ill. 292, 297.) Hence it is difficult, if not impossible, to apply the common-law concept of a possibility of reverter to a grant of oil and gas because of this continuation of title to the oil and gas in the grantor or lessor. In the case at bar, title to the 7/11th interest represented by the first series of deeds never did pass to the grantees in those deeds.

Furthermore, no practical difficulty ordinarily resulted in the case of a surface estate from the grantor's inability to alienate the common-law possibility of reverter. The fee was in someone else and the instances in which it reverted were rare. In the case of oil or gas, however, the lessor is often entitled to continuing royalties, and it might well be a serious and unnecessary hardship if he were unable to transfer such an interest freely.

It is no doubt because of considerations such as those just mentioned that this court has repeatedly held the interest remaining in the lessor or term grantor of oil and gas to be alienable and has, in effect, refused to apply the common-law concept of a possibility of reverter to such interests.

It is true that the legislature, in 1947, enacted a pro-

hibition against the alienability of a possibility of reverter, right of entry, or re-entry for breach of a condition subsequent. (Laws of 1947, p. 659.) But when this enactment was adopted, it did not, by force of the uses and exigencies of the country and the decisions of this court, extend to reversionary interests created by leases or term mineral deeds for oil-and-gas interests.

It is our opinion that the decree of the circuit court of Clay County was correct in all respects and it is therefore affirmed.

*Decree affirmed.*