THE PEOPLE *ex rel.* ANITA HARRIS, Treasurer and *ex officio* Collector of Taxes for Jasper County, Plaintiff-Appellant, v. PARRISH OIL PRODUCTION, INC., *et al.*, Defendants-Appellees.

Fifth District   No. 5—92—0021

Opinion filed August 5, 1993.—Rehearing denied September 14, 1993.

Norbert J. Goetten, Stephen E. Norris, and Kendra S. Mitchell, all of State's Attorneys Appellate Prosecutor's Office, of Mt. Vernon, Special Prosecutor, for appellant.

Patrick L. Duke, of Flora, for appellees.

JUSTICE MAAG delivered the opinion of the court:

Plaintiff, the collector of taxes for Jasper County (tax collector), appeals from a judgment of the circuit court of Jasper County, which held the Illinois Department of Revenue Regulation Section 4 (Illinois Property Tax Manual (Mar. 1980), §IV, at 40) unconstitutional and vacated the tax sales performed pursuant to the regulation. The only issue raised on appeal is whether the circuit court erred in finding the regulation unconstitutional.

The defendants, Parrish Oil Production, Inc. (Parrish), and St. Pierre Oil Company (St. Pierre), are the operators of numerous gas and oil wells in Jasper County. Parrish and St. Pierre are tenants in common with various individuals. Each tenant in common owns a fractional undivided portion of the working interest of each well. There are more than 30 shareholders in each well with some of the fractional shares being as small as .0058399 of the seven-eighths working interest.

Parrish and St. Pierre completed and filed with the tax collector real-property tax returns for oil producers. Attached to each return was a computer-generated list naming all fractional-interest holders, the addresses of the interest holders, and their ownership interest in each well.

Notwithstanding the information provided and contained in tax returns, the tax collector billed Parrish and St. Pierre as the operators of the wells for the property tax on the entire seven-eighths working interest rather than just the fractional undivided share that each owned. This billing was performed pursuant to the requirements of the regulation, but Parrish and St. Pierre paid only the amount attributable to their individual fractional ownership interests. Parrish and St. Pierre refused to pay the property tax on the portions of the working interest in which they had no ownership interest. There is some dispute whether the other fractional owners of the working interest of each lease attempted to pay the property tax on their individual percentages, but in any event, the tax collector did not credit their tax payments.

On September 26, 1990, the tax collector gave notice that an application for judgment and order of sale for delinquent taxes would be made on October 16, 1990, for the entire working interest of the oil- and gas-well leases. Parrish and St. Pierre filed objections on October

9, 1990, to the application for judgment, and a hearing was held on September 13, 1991.

The sole issue considered during the hearing was whether the entire working interest could be sold to satisfy the delinquent unpaid tax obligations. Despite the pending tax objections filed by Parrish and St. Pierre in October 1990, the tax collector sold the entire working interest in each gas- and oil-well lease at a tax sale to satisfy 100% of the property tax due from the entire working interest.

On December 20, 1991, the circuit court sustained the objections filed by Parrish and St. Pierre, declared the regulation unconstitutional, and voided any and all tax sales of defendants' oil- and gas-well leases performed pursuant to the regulation. Although the trial court found the regulatory scheme to be the most efficient means of collecting the real-property tax on the mineral interests in the land and noted that it had been informally and unofficially approved by the Illinois Attorney General, the trial court concluded that the regulation was inconsistent with and violative of the laws of the State of Illinois and the Constitution of the United States. Pursuant to the tax collector's petition, a stay of enforcement of the circuit court's judgment was granted pending this appeal.

On appeal the tax collector argues that the trial court erred in finding the regulation unconstitutional and further argues that Parrish and St. Pierre lacked standing or alternatively should have been estopped from offering any objection, since defendants failed to pay under protest the taxes assessed against them. Defendants assert that the tax collector waived the requirement of payment under protest when it failed to raise the issue at trial. Parrish and St. Pierre also argue that the regulation in question is unconstitutional under the due process and equal protection guarantees of the Federal and Illinois constitutions. We agree. Long ago our founding fathers determined that there should be no taxation without representation, and today we decide that there should be no taxation without notification.

Under a mining lease, the minerals belong to the lessor, who is usually the owner of the surface estate, and the lessee has the right to explore and remove the minerals, upon which the lessor has the reserved royalty or rent. (*Murbarger v. Franklin* (1960), 18 Ill. 2d 344, 347-48, 163 N.E.2d 818, 821.) The term "working interest," as used in connection with an oil and gas lease, refers to that portion of the oil and gas that may be produced from the premises after the royalty is paid to the lessor. (*Bates v. Mansfield* (1991), 212 Ill. App. 3d 69, 73, 570 N.E.2d 549, 551.) Hence a "seven-eighths working interest" refers to the fact that the lessor is paid one-eighth of the value of the

oil and gas produced as rent or royalty and the remaining seven-eighths is paid to the owners of the working interest. Pursuant to the Oil and Gas Lien Act of 1989, an operator is "a person who is responsible for or assumes the daily supervision and management for operating a leasehold and may be a co-owner of a leasehold interest." Ill. Rev. Stat. 1989, ch. 82, par. 501(8).

The powers granted to the Illinois Department of Revenue are found in section 130 of the Revenue Act of 1939 (Revenue Act) (Ill. Rev. Stat. 1989, ch. 120, par. 611 *et seq.*). More specifically, "[t]he Department shall *** (3) [p]rescribe general rules and regulations, not inconsistent with law, for local assessment officers relative to the assessment of property for taxation." Ill. Rev. Stat. 1989, ch. 120, par. 611(3).

■ The Department of Revenue's regulation at issue provides in pertinent part:

"The following regulation shall be observed in listing oil for assessment in Illinois: *** (2) Where the working interest is owned by more than one person, the entire interest will be assessed to the operator, who can divide the tax bill as he would any other operating expense." Illinois Property Tax Manual (Mar. 1980), §IV, at 40.

This regulation requires that the entire tax levied and assessed against the working interest in an oil or gas leasehold estate be billed to the operator instead of the individual owners of the working interest. The assessment and billing are made in the name of the operator who is obligated for the payment of the entire bill and not just that portion actually owned, if any, by the operator. As an alternative to this regulation, Parrish and St. Pierre propose individual notice and billing to each of the working interest owners.

The guarantee of due process of law extends to every governmental proceeding which may interfere with personal or property rights, whether the process be legislative, judicial, administrative, or executive. *Pure Oil Co. v. City of Northlake* (1956), 10 Ill. 2d 241, 140 N.E.2d 289; *People v. Scott* (1927), 326 Ill. 327, 157 N.E. 247.

The proposition that a person shall not be deprived of life, liberty, or property without due process of law is as old as any principle of civilized government and is found in the Magna Charta and in substance, if not in form, in nearly all constitutions adopted by the several States. (*Munn v. Illinois* (1877), 94 U.S. 113, 24 L. Ed. 77.) The due process provisions of the Illinois Constitution and the fourteenth amendment to the Federal Constitution have been construed to be similar in both scope and purpose (*Barnett v. County of Cook* (1944),

388 Ill. 251, 57 N.E.2d 873; see Ill. Const. 1970, art. I, §2; Ill. Ann. Stat., 1970 Const., art. I, §2, Constitutional Commentary, at 109 (Smith-Hurd 1971)), although not identical. For purposes of our discussion of the issues in this case, we need not address the differences, since our decision is the same under both provisions. Accordingly, we will address them together.

The United States Supreme Court has emphasized that due process of law, at a minimum, prohibits the deprivation of property without providing notice and an opportunity for a hearing appropriate to the nature of the case. (*Memphis Light, Gas & Water Division v. Craft* (1978), 436 U.S. 1, 56 L. Ed. 2d 30, 98 S. Ct. 1554; *Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652.) The timing and content of the notice and the nature of the hearing will depend on appropriate accommodation of the competing interests involved. *Goss v. Lopez* (1975), 419 U.S. 565, 42 L. Ed. 2d 725, 95 S. Ct. 729.

■ The procedural safeguards mandated by due process in a particular case vary, depending upon,

> "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge* (1976), 424 U.S. 319, 335, 47 L. Ed. 2d 18, 33, 96 S. Ct. 893, 903.

It is well established that, in construing a statute or regulation, there is a presumption of constitutionality, and where possible, statutes and regulations will be interpreted to avoid a finding of constitutional infirmity. (*People v. Geever* (1988), 122 Ill. 2d 313, 324, 522 N.E.2d 1200; *People v. Roos* (1987), 118 Ill. 2d 203, 210, 514 N.E.2d 993, 996.) Our evaluation of the regulation must focus upon whether it is constitutional to allow the taking of property (an undivided interest in an oil and gas lease) by delinquent-tax sale, without any notification being sent to the individual owners of the undivided interest.

In considering the first factor identified in *Mathews*, the significance of the private interest affected, we are guided by the principle that the due process clause shields private property rights from legislative aggression which impairs or extinguishes those rights without satisfying basic safeguards, such as notice and an opportunity to be heard. (*Board of Education of Normal School District v. Blodgett*

(1895), 155 Ill. 441, 450, 40 N.E. 1025, 1028; *Mackey v. Montrym* (1979), 443 U.S. 1, 61 L. Ed. 2d 321, 99 S. Ct. 2612.) The same is true of regulations which similarly impair these rights.

Property interests are defined by State law (*Yu v. Clayton* (1986), 147 Ill. App. 3d 350, 358, 497 N.E.2d 1278, 1284, citing *Cleveland Board of Education v. Loudermill* (1985), 470 U.S. 532, 538, 84 L. Ed. 2d 494, 501, 105 S. Ct. 1487, 1491), and it has been uniformly held by Illinois courts that an oil and gas lease of indefinite duration creates a freehold. (*Updike v. Smith* (1942), 378 Ill. 600, 39 N.E.2d 325.) The owners of the working interest obviously have a property interest, yet the regulation itself contains insufficient procedural safeguards to ensure that the owner has adequate notice and opportunity for a hearing prior to being deprived of property pursuant to a delinquent-tax sale.

The next factor to be considered under *Mathews* is the risk of an erroneous deprivation. The regulation, besides lacking adequate procedural safeguards, is self-perpetuating and difficult if not impossible to challenge. Pursuant to statute, the owner of the right to produce oil and gas under an oil and gas lease has a separate estate which can be taxed separately (Ill. Rev. Stat. 1989, ch. 96½, par. 157), but under the regulation, the operators of the wells receive the tax bill for the entire working interest. Because owners do not receive tax bills, they cannot review the taxes assessed and cannot challenge the validity of the taxes assessed. If the operator, who may or may not have an ownership interest in the working interest, fails or refuses to pay the taxes due on the entire working interest, the property may be sold for delinquent taxes. The owners may never be *notified* of their tax liability.

Further, sections 194 and 235 of the Revenue Act (Ill. Rev. Stat. 1989, ch. 120, pars. 675, 716) require that the person seeking to object to the taxes assessed must pay his entire tax bill under protest before an objection to the real estate taxes may be brought. This requirement becomes an impossible task for owners who by virtue of the regulation receive no tax-bill notice.

In the case before us, plaintiff argues that defendants have failed to comply with sections 194 and 235 of the Revenue Act and should have been barred from offering any objection to the regulation. There has never been any dispute that Parrish and St. Pierre paid 100% of the taxes assessed against their respective portions of the working interest. We believe that the defendants satisfied sections 194 and 235 of the Revenue Act when they paid their proportionate share of the taxes assessed.

The tax collector argues that there is no due process notice violation or in the alternative that Parrish and St. Pierre have no standing to raise any due process violation. Rather, the defendants are alleged to be the agents of the owners, and as an operator, responsible for the daily supervision and management of the oil and gas leasehold. (Ill. Rev. Stat. 1989, ch. 82, par. 501(8).) It is claimed that notice to the operator alone is sufficient. The tax collector reasons that if the operator is the agent of the owners, the tax notice pursuant to the regulation is proper.

It is argued in the alternative that if the operator is not the agent of the owners, then Parrish and St. Pierre as operators have no standing to raise the due process rights of the owners. The general proposition that a person does not have standing to challenge the constitutionality of a statute, unless he is directly affected and is within the class aggrieved by the alleged unconstitutionality (*People v. Wagner* (1982), 89 Ill. 2d 308, 311, 433 N.E.2d 267, 269), is argued in support of this position.

We find these arguments to be without merit. While it is true that notice to the agent is notice to the principal (*Wollenberger v. Hoover* (1931), 346 Ill. 511, 179 N.E. 42), there is no presumption of agency. (*Louisiana Farm Supply Co. v. Carroll* (1965), 56 Ill. App. 2d 175, 205 N.E.2d 478.) Agency must be proved or inferred from facts proved. (*Sievert v. Illinois Furniture Co.* (1913), 178 Ill. App. 574.) The burden of proving agency is on the person who asserts it. (*Mitchell Buick & Oldsmobile Sales, Inc. v. National Dealer Services, Inc.* (1985), 138 Ill. App. 3d 574, 485 N.E.2d 1281.) Plaintiff failed to address or meet this burden. Even if an agency relationship is inferred, there is absolutely nothing in the record to support a finding that the owners of the working interest gave the defendants the power to pay or protest their taxes. Agency is a *consensual, fiduciary* (*Gunther v. Commonwealth Edison Co.* (1984), 126 Ill. App. 3d 595, 467 N.E.2d 1104), and *voluntary* relationship that cannot exist without the consent of both the principal and the agent (*Stone v. Stone* (1950), 407 Ill. 66, 94 N.E.2d 855), and the extent of the agency cannot be assumed because of convenience. (*Halladay v. Underwood* (1900), 90 Ill. App. 130.) Simply stated, there is nothing before us to show that the scope of the supposed agency is as broad as the tax collector claims.

Next, in addressing plaintiff's assertion that defendants as operators lack standing to challenge the constitutionality of the regulation, it must be remembered that both defendants in addition to being operators are also owners in the working interests at issue. As owners

of a fractional share of the working interest, they are members of the class aggrieved by the regulation.

We consider now the third *Mathews* factor: the government's interest. The fiscal and administrative burdens of a different procedure must be compared to the importance of the rights affected by the present regulatory scheme.

While the plaintiff's interest in maintaining an efficient tax scheme to ensure the continued financial support of governmental offices, programs, and services is of major importance, the plaintiff is not prohibited from assessing and collecting taxes. The proposed alternative, individual notice to all holders of a working interest, would be more burdensome. It cannot be denied that placing the burden on the plaintiff to send out individual tax notices to the individual owners of the working interest of oil and gas leases may entail greater fiscal and administrative costs. However, these burdens do not outweigh an individual's guarantee of due process under the law. This is especially true in view of the fact that all necessary information regarding the individual owners of the working interests of oil and gas leases is supplied to plaintiff by the operators on a real-property tax return for oil producers.

We are mindful that the present regulatory scheme is easy, convenient, and relatively simple to administer. We also recognize that individual notification to fractional-interest holders would be more burdensome and expensive. But mere inconvenience and incidental expenses in giving notice cannot be allowed to negate the due process rights of these fractional-interest holders. Procedural due process guarantees require a method that is calculated to provide notice to those persons affected, and regulatory simplicity will not be allowed to abridge those rights. *Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 314, 94 L. Ed. 865, 873, 70 S. Ct. 652, 657.

In its reply brief, the tax collector argues that individual notice to all interest holders would serve no purpose. The collector points out that where property is held by varying interests, it is the property as a whole which is to be assessed, not the value of the respective individual interests. (*In re Application of Korzen* (1978), 63 Ill. App. 3d 835, 380 N.E.2d 852.) Therefore, even with individual notice, if one owner of the working interest failed to pay his taxes, the entire interest could still be sold. Ill. Rev. Stat. 1991, ch. 120, par. 508(a).

The tax collector did not raise this issue in its opening brief. Therefore, it is waived. (Supreme Court Rule 341(e)(7) (134 Ill. 2d R. 341(e)(7)); *Consolidated Rail Corp. v. Liberty Mutual Insurance Co.* (1981), 92 Ill. App. 3d 1066, 416 N.E.2d 758.) Nevertheless, address-

ing the merits of the argument, we are unpersuaded. The risk of non-payment is substantially greater if the individual owners receive no personal notice than if they do. While a failure to pay by one individual may result in foreclosure, this failure to pay is nothing more than a *possibility*. Without notice, the failure to pay becomes a *likelihood* in our opinion.

The notification procedure advanced by Parrish and St. Pierre may well enhance the collection of taxes, reduce the tax foreclosures, and result in additional revenue, thereby fiscally enhancing the government's tax coffers. It is possible that the added expense of individual notice would be offset by added revenue. It is hard to pay a bill you never receive.

Lastly, Parrish and St. Pierre argue that the regulation deprives working-interest owners of oil and gas leases of the benefit of equal protection under the law. Defendants assert that royalty-interest holders, unlike the working-interest owners, receive a separate assessment for their interests and each owner of a royalty interest may elect to pay or not pay the tax, resulting in the sale of their separate interest if they fail or refuse to pay.

The tax collector merely responds that there is a rational basis for treating the two ownership interests differently for tax purposes. It is claimed that the nature of royalty and working interests are so different that different classifications are warranted because the royalty interest is often held by the owner of the surface estate. We find plaintiff's argument unpersuasive. The equal protection clauses of the fourteenth amendment and the Illinois Constitution (Ill. Const. 1970, art. I, §2) forbid unequal government action that arbitrarily discriminates against some and favors others in like circumstances. *Ashcraft v. Board of Education of Danville Community Consolidated School District No. 118* (1980), 83 Ill. App. 3d 938, 942, 404 N.E.2d 983, 986.

The equal protection guarantee is applicable to the exercise of the power of taxation. (*City of Joliet v. Bosworth* (1976), 64 Ill. 2d 516, 356 N.E.2d 543.) While the equal protection clause imposes no "iron rule" of equal taxation (*Department of Revenue v. Warren Petroleum Corp.* (1954), 2 Ill. 2d 483, 489-90, 119 N.E.2d 215, 220), it does require that a classification for purposes of taxation be based on a real and substantial difference having a rational relation to the subject of the particular legislation. *Searle Pharmaceuticals, Inc. v. Department of Revenue* (1987), 117 Ill. 2d 454, 468, 512 N.E.2d 1240, 1246.

■ We see no real and substantial difference between the individual owners of the undivided working interest and the individual owners of the royalty interest to justify the regulation's mandate of dis-

parate notification practices. It is clear that holders of a royalty interest may be just as numerous as holders of a working interest. Each has a protectable property interest entitled to equal protection guarantees. Each stands to lose that property interest in the absence of adequate notification and opportunity for hearing.

The regulation is facially invalid as applied to these facts and deprives the owners of the undivided working interest of oil and gas leases of their property without due process and equal protection of law.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

LEWIS and GOLDENHERSH, JJ., concur.