SIXTH DIVISION   

DECEMBER 12, 1997

No. 1-95-4090

)

PALUMBO BROS., INC., ) APPEAL FROM THE

an Illinois corporation, ) CIRCUIT COURT

Plaintiff-Appellant, ) OF COOK COUNTY.

)

v. )

)

RAYMOND T. WAGNER, JR., Director ) HONORABLE

of the ILLINOIS DEPARTMENT OF ) EARL ARKISS,

REVENUE, ) ALEXANDER P. WHITE,

Defendant-Appellee. ) JUDGES PRESIDING.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff Palumbo Bros, Inc. (Palumbo) appeals orders of the circuit court of Cook County dismissing a complaint Palumbo filed against defendant Raymond T. Wagner, the Director of the Illinois Department of Revenue (Director) to determine the enforceability of a tax obligation against Palumbo and denying Palumbo's motion to reconsider.

The record on appeal indicates the following facts.  On April 7, 1995, Palumbo filed a complaint for declaratory judgment and other relief against the Director.  Palumbo alleged that it was a member of a joint venture with a separate, independent Illinois corporation known as Benchmark Construction Company (Benchmark).  The Illinois Department of Revenue (Department) assigned the joint venture an Illinois Business Tax (IBT) number that was different from Palumbo's IBT number.

The complaint alleged that on December 12, 1991, the Depart­ment issued a Notice of Tax Liability (1991 NTL) numbered "S F 199134385402012" to the joint venture under its own IBT number, proposing to assess $31,849 in use taxes, $3,185 as a penalty and $14,332 in interest, for a total of $49,366.  The 1991 NTL, which was attached as an exhibit to the complaint, is addressed to Palumbo at 323 S Center Street in Hillside, Illinois.  On June 15, 1992, the Department issued a Notice of Tax Liability (1992 NTL) numbered "S F 9213544903001" to the joint venture proposing to assess motor vehicle use taxes, with a penalty and interest totalling $262,158.  The 1992 NTL, which was attached as an exhibit to the complaint, is addressed to "Palumbo Bros. Inc./Benchmark Const. Co." (Palumbo/Benchmark) at 323 S Center Street in Hillside, Illinois.

The complaint alleged that the Department never notified or instituted proceedings against Palumbo individually for these pro­posed assessments.  On November 3, 1993, the Director caused a tax lien to be filed in favor of the Department upon all real and personal property owned or acquired "by the above named tax­payer."  The Notices of Tax Lien, which are attached as exhibits to the complaint:  refer to both Palumbo and Palumbo/Benchmark; state that they are based on the 1991 NTL and the 1992 NTL; and carry the joint venture's IBT number.

Palumbo sought a declaration that it had no obligation to the Department for the taxes, penalties and interest assessed against the joint venture.  Palumbo also sought a declaration that the Department had no valid lien against Palumbo's individ­ual assets, including, but not limited to a particular piece of real property located in South Barrington, Illinois.  Palumbo also sought similar relief, including a declaration that the Department had no legal basis to enforce a tax lien against Palumbo by reason of a tax obligation of the joint venture.

On April 12, 1995, Palumbo filed an emergency motion for a temporary restraining order, alleging that the Department was attempting to serve a notice of levy on the Chicago Title Insur­ance Company, which was holding $169,000 in escrow that repre­sented the net profit on the sale of the property Palumbo named in its complaint.  The next day, the parties entered into an agreed preliminary injunction restraining the Director or his agents from levying on the property at issue until the order was vacated or modified by the court or altered by agreement of the parties.

The Director then filed a motion to dismiss Palumbo's complaint pursuant to section 2-619 of the Code of Civil Proce­dure (735 ILCS 5/2-619 (1996))(Code).  The motion alleged that the Department learned of the joint venture during an audit of Palumbo performed at Palumbo's place of business, causing The Department to assign the joint venture an IBT number.  The motion alleged that the 1991 NTL was issued as a result of the audit and that the 1991 NTL and the 1992 NTL were sent to Palumbo's place of business in accordance with statutory requirements.

The Director alleged that Palumbo failed to request a hearing on either NTL issued under the joint venture's IBT number and thus became final after 60 days.  The Director asserted that Palumbo was given notice that comported with due process.  The motion asked the court to dismiss the complaint for failure to state a claim and to allow the Department to collect the taxes administratively.  The Director also attached his notarized sworn statement that he had full knowledge of the facts set forth in the motion and that the matters asserted therein were true.

Palumbo apparently filed a response to the motion to dis­miss.  However, the parties have failed to identify where this response appears in the record on appeal.

On July 5, 1995, the Department, through an Assistant Attorney General, filed a reply to "its motion to dismiss."  Attached to the reply are two exhibits that purport to be domes­tic return receipts for certified mail.  Exhibit A of the reply includes a photocopy of a receipt addressed to Palumbo at the Center Street address that purports to show delivery on Decem­ber 20, 1991; the space designated as "Signature -- Agent" is signed by a Jim Romano.  Exhibit B of the reply includes a photocopy of a receipt addressed to Palumbo/Benchmark at the Center Street address that purports to show delivery on June 18, 1992; the space designated as "Signature -- Agent" is again signed by a Jim Romano.  The motion states that Jim Romano is "presumably a Palumbo agent ***."

The record does not disclose the respective interests of Palumbo and Benchmark in the joint venture.  The record does not disclose the identity of the joint venture's officers or direc­tors.  The record does not disclose the purpose of the joint venture.  The record does not disclose the business or project to be carried on by the joint venture.  The record does not disclose when the joint venture commenced or whether it has ceased opera­tion.  The record does not disclose any information relevant to Benchmark, aside from the allegation that it is an Illinois corporation.  The record does not disclose whether the joint venture had any other address other than that of Palumbo's principal place of business.  The 1992 NTL refers to the purchase or sale of a vehicle, aircraft, trailer or mobile home; other­wise, the record does not disclose the transactions that formed the grounds for the Department's assessment.  The 1991 NTL states that it is based on an audit for November 1988; otherwise, the record does not disclose the time period for which the Department assessed taxes.  The record does not disclose whether the joint venture ever registered or filed returns with the Department or paid any taxes.

On July 26, 1995, the trial court issued a memorandum and decision dismissing Palumbo's complaint.  Palumbo filed a timely motion to reconsider; the Department filed a response.  Palumbo filed a reply memorandum, in which Palumbo states that it first learned of the NTLs at issue on February 10, 1994, during a proceeding before the Department regarding unrelated matters.  The trial court denied the motion to reconsider on October 25, 1995.  Palumbo now appeals.

I

Palumbo maintains that the trial court erred in granting the Department's motion to dismiss, claiming that the Department failed to present affirmative matter defeating Palumbo's claim.  The Director was granted involuntary dismissal under section 2-619 of the Code.  In its reply to Palumbo's response, the Department specifically relied on Section 2-619(a)(9), which permits dismissal where "the claim asserted * * * is barred by other affirmative matter avoiding the legal effect of or defeat­ing the claim."  735 ILCS 5/2-619(a)(9) (1996).  A section 2-619(a)(9) motion to dismiss admits the legal sufficiency of the plaintiff's cause of action much in the same way that a section 2-615 motion to dismiss admits a complaint's well-pleaded facts.  
Kedzie and 103rd Currency Exchange, Inc. v. Hodge
, 156 Ill. 2d 112, 115, 619 N.E.2d 732, 735 (1993).  Conclusions of law, however, are not admitted.  
McKinnon v. City of Chicago
, 243 Ill. App. 3d 87, 91, 612 N.E.2d 67, 69 (1993).  The phrase "affirma­tive matter" encompasses any defense 
other than
 a negation of the essential allegations of the plaintiff's cause of action.  
Hodge
, 156 Ill. 2d at 115, 619 N.E.2d at 735.  The granting of a section 2-619 motion to dismiss is subject to 
de novo
 review on appeal.  
Hodge
, 156 Ill. 2d at 116, 619 N.E.2d at 735.

II

In this case, Palumbo alleges that the Department violated Palumbo's right to due process in the tax proceeding regarding the joint venture of which Palumbo was a part.  The guarantee of due process of law extends to every governmental proceeding which may interfere with personal or property rights, whether the process be legislative, judicial, administrative, or executive.  
People ex rel. Harris v. Parrish Oil Production, Inc.
, 249 Ill. App. 3d 664, 667, 622 N.E.2d 810, 814 (1993).  Due process of law, at a minimum, prohibits the deprivation of property without providing notice and an opportunity for a hearing appropriate to the nature of the case.  
Harris
, 249 Ill. App. 3d at 668, 622 N.E.2d at 814.  The procedural safeguards mandated by due process in a particular case vary, depending upon:

"first, the private interest that will be affected by the offic­ial action;  second, the risk of an erroneous depriva­tion of such interest through the procedures used, and the probable value, if any, of additional or substitute proce­dural safeguards;  and final­ly, the Governments' interest, including the function involved and the fiscal and adminis­trative burdens that the additional or sub­stitute procedural requirement would entail."  
Mathews v. Eldridge
, 424 U.S. 319, 335, 96 S. Ct. 893, 903, 47 L. Ed. 2d 18, 33 (1976).

This case involves a tax proceeding.  We note that the United States Supreme Court has often held that a state may employ various financial sanctions and summary remedies to encourage timely payment of taxes prior to the resolution of any dispute over their validity.  
E.g.
, 
McKeeson Corp. v. Division of Alco­holic Beverages and Tobacco, Dept. of Business Regulation of Florida
, 496 U.S. 18, 37, 110 S. Ct. 2238, 2250-51, 110 L. Ed. 2d 17, 36 (1990).  A tax proceeding generally has two phases: assessment and collection.  
People ex rel. Scott v. Pintozzi
, 50 Ill. 2d 115, 126-27, 277 N.E.2d 844, 850-51 (1971).  Palumbo claims that it was denied due process in both phases.

A

Regarding the assessments in this case, we note that Illi­nois law has allowed for the imposition of personal tax liability on corporate officers under certain circumstances.  For example, our supreme court has stated that:

"Due process does not require that the defen­dants be given personal notice in the assess­ment phase apart from the notice that was given to their corporate entity before per­sonal liabil­ity for the tax can be imposed upon them in a separate proceed­ing."  
Pin­tozzi
, 50 Ill. 2d at 127, 277 N.E.2d at 851.

In 
Department of Revenue v. Semenek
, 194 Ill. App.3d 616, 619, 551 N.E.2d 314, 315-16 (1990), this court held that NTLs ad­dressed to a dissolved corporation under the corporate registra­tion number were sufficient to give the operators of the business notice of the assessment of liability.  Indeed, in 
Semenek
, this court was concerned that the defendants' interpretation of Illinois corporate law would enable taxpayers to undermine the detailed registration requirement and enforcement scheme of the Retailers' Occupation Tax Act by permitting taxpayers to shift tax liability to nonexistent or insolvent corporations.  
Semenek
, 194 Ill. App.3d at 619, 551 N.E.2d at 316.

This case does not involve the corporate form; it is undis­puted here that Palumbo was a member of a joint venture, which is treated as a partnership subject to the Uniform Partnership Act.  
Japczyk v. Gust K. Newberg Construction Co.
, 224 Ill. App. 3d 325, 328-29, 586 N.E.2d 572, 574 (1991).  Every partner is an agent of the partnership for the purpose of its business.  805 ILCS 205/9 (West 1996).  Generally, notice to any partner of any partnership matter constitutes notice to all partners.  805 ILCS 205/12 (West 1996).  Partners are also liable for the wrongful acts and omissions, penalties, misapplication of funds and all other debts and obligations of the partnership.  See 805 ILCS 205/15 (West 1996).

In 
Cook v. Department of Revenue
, 281 Ill. App. 3d 171, 177, 666 N.E.2d 893, 897 (1996), this court upheld a partner's due process claim
(footnote: 1), distinguishing 
Pintozzi
 on the ground that the corporations involved were the alter egos of individual defen­dants, who used the corporation to commit fraud.  Palumbo's complaint conceals more than it reveals about the nature of the joint venture and its operation.  Although there is no allegation of fraud in this case, it is undisputed that the Department first learned of the joint venture's existence during an audit of Palumbo and assigned an IBT number to the joint venture.  It could be safely inferred from these undisputed facts that the joint venture did not register or file returns with the Depart­ment or pay taxes.

Moreover, regardless of Palumbo's intent in the matter, given that the joint venture is akin to a partnership, there was and is no corporate veil to pierce.  Similar to 
Pintozzi
, the plaintiff here does not allege that the joint venture did not receive adequate notice of the tax assessments at issue.  Palumbo has alleged no facts that would prevent the imputation of that notice and knowledge of potential personal liability to Palumbo under Illinois partnership law.

The 
Cook
 court also distinguished 
Semenek
 on the basis that the individuals therein had assumed a personal obligation to collect and remit taxes by continuing the business after the dissolution of the corporation.  See 
Cook
, 281 Ill. App. 3d at 177, 666 N.E.2d at 897-98.  However, as with the 
Cook
 opinion's treatment of 
Pintozzi
, the distinctions went to the issue of whether liability could be imposed on the individual defendants, not the issue of whether the individual defendants were entitled to notice in an individual capacity.  Furthermore, while the skeletal record in this case is silent on the questions of whether the joint venture still exists and, if so, whether it is solvent, we note that Palumbo's argument could open the door to the type of liability shifting described in 
Semenek
.  Thus, the basic thrust of 
Semenek
 seems applicable in the partnership context.  

On the issue of notice, 
Cook
 relied upon 
People ex rel. Harris v. Parrish Oil Production, Inc.
, 249 Ill. App. 3d 664, 622 N.E.2d 810 (1993), in which this court invalidated tax sales resulting from a regulation that provided no notice to tenants in common  owning undivided, fractional portions of a working interest in oil and gas leases.  The 
Parrish Oil Production
 court rejected the argument that notice to the operator of a well was sufficient, because there was no proof that the operator was the agent of the owners, particularly for the purpose of payment of taxes.  
Parrish Oil Production
, 249 Ill. App. 3d at 670, 622 N.E.2d at 816.  These concerns are simply not present in the context of the liability of a joint venturer, for the reasons explained above.

In sum, given the nature of the partnership form and part­nership liability, we conclude that 
Pintozzi
 and 
Semenek
 are persuasive authority on the issue of notice of the tax assess­ment.
(footnote: 2)  Accordingly, regardless of whether the NTLs constitute notice to Palumbo individually, Palumbo was not denied due process in the assessment of the taxes in this case.

B

Nevertheless, Palumbo maintains that it was denied due process of law when the Department recorded a lien against not only property belonging to the joint venture, but also property belonging to Palumbo in an individual capacity.  Palumbo notes that "the Pintozzis never claimed they were denied due process in the 
collection
 proceeding."  Yet Palumbo also claims that there was no "collection proceeding" in this case, because the Depart­ment simply recorded a lien against Palumbo's property.  

Of course, if there has been no collection proceeding, Palumbo cannot complain that it was denied due process in the proceeding.  However, we note that a lien affords a supplemental and additional remedy for the collection of a debt.  
Gaskill v. Robert E. Sanders Disposal Hauling
, 249 Ill. App. 3d 673, 676, 619 N.E.2d 235, 238 (1993).  Thus, the recording of the lien may be characterized as a collection proceeding or as a part thereof.  The ultimate question in this case is whether the Department denied Palumbo due process of law by recording a lien against Palumbo's property "without bothering to provide Palumbo with the opportunity to contest liability for the [j]oint [v]enture's debt."

In this case, the trial court ruled that Palumbo was indi­vidually notified at the assessment stage.  The NTLs in this case were attached to Palumbo's complaint and control over any con­trary allegation by Palumbo.  The 1991 NTL was addressed to "Palumbo Bros., Inc." at Palumbo's address.  The 1992 NTL was addressed to the joint venture, which includes "Palumbo Bros., Inc." in its own name, at the same address.  The NTLs used the IBT number assigned to the joint venture.  The Director's veri­fied motion to dismiss establishes that the NTLs were sent in accordance with the statutory requirements.

The argument that a NTL that names Palumbo alone and is sent to Palumbo's principal place of business does not provide notice to Palumbo strains credulity.  The claim that Palumbo was not notified by a NTL that names a joint venture which includes Palumbo in its title and is sent to Palumbo's principal place of business is only slightly more credible.  Palumbo has made no argument and has alleged no facts that would show it could escape personal liability under partnership principles as a member of the joint venture in a collection proceeding.

Palumbo relies primarily on three cases to support its argument regarding the lien.  First, Palumbo relies on 
Parrish Oil Production
.  However, that case held that a Department regulation was unconstitutional because it did not provide adequate notice to the property owners who were not partners of the 
assessment
 of certain taxes.  In this case, notice to the joint venture is sufficient to the partners that they may be held personally liable for the tax debt in a collection proceeding.

Second, Palumbo cites 
Peterson v. Superior Bank FSB
, 242 Ill. App. 3d 1090, 611 N.E.2d 1139 (1993), for the propositions that:  (1) a judgment obtained against a partnership cannot be enforced against an individual partner that was not a party named in the underlying proceedings; and (2) an individual partner cannot be held vicariously liable for partnership debts.  
Peter­son
 was not a tax case; rather, it was an attempt by a private plaintiff to bind a joint venture or co-venturers that were not parties to an arbitration proceeding to a judgment confirming an award against two of the venturers.  The 
Peterson
 court noted that Illinois partnership law generally provides that a partner cannot submit a partnership claim or liability to arbitration.  
Peterson
, 242 Ill. App. 3d at 1093, 611 N.E.2d at 1141; see 805 ILCS 205/9(3)(e) (West 1996).  There is no such statutory bar regarding tax protests.

Furthermore, 
Peterson
 involved the enforceability of a 
judgment
 against two venturers as applied to a joint venture and co-venturers who were not parties to the underlying arbitration proceeding.  In this case, the lien against Palumbo's property was not reduced to judgment.  We note that the 
Cook
 opinion states that "a final assessment is a judgment or its procedural and substantive equivalent."  
Cook
, 281 Ill. App. 3d at 178, 666 N.E.2d at 898.  However, 
Cook
 cites no authority for this propo­sition.  The 
Cook
 opinion cites section 3-101 of the Administra­tive Review Law for the proposition that an administrative decision is a judgment, but section 3-101 does not stand for this broad proposition.  See 735 ILCS 5/3-101 (West 1996).

The plain text of section 5 of the Retailers' Occupation Tax Act states that the Department must submit a certified copy of a final assessment, along with other documents, to a circuit court to have judgment entered against a taxpayer.  35 ILCS 120/5 (West 1996).  Moreover, an aggrieved person may seek a hearing on a final assessment "at any time before such assessment is reduced to judgment."  35 ILCS 120/5 (West 1996).  Thus, it is clear that the statute does not equate a final assessment with a judgment.

Furthermore, a prior version of the collection provisions of the Retailers' Occupation Tax Act was declared unconstitutional as a violation of the separation of powers precisely because it attempted to confer the power to enter a judgment on the court clerk at the behest of the Department.  
People ex rel. Issacs v. Johnson
, 26 Ill. 2d 268, 186 N.E.2d 346 (1963).  If a final assessment were the equivalent of a judgment, all of the Depart­ment's final assessments would be unconstitutional; to so hold would unconstitutionally impinge on the legislative function of taxation.  Indeed, this is another reason why an administrative decision cannot generally be considered a judgment under section 3-101 of the Administrative Review Law, even though such a decision may affect the legal rights and duties of the parties.  

Nor can a tax lien be considered a judgment.  The Retailers' Occupation Tax Act allows aggrieved persons to seek a hearing from the Department at any time before the assessment is reduced to judgment, even though a tax lien may have attached.  35 ILCS 120/5, 5a (West 1996).  The lien was not imposed by a court.  As Palumbo is not attacking the enforcement of a judgment, 
Peterson
 is distinguishable from this case.

Finally, Palumbo cites the 
Cook
 opinion for the proposition that it was entitled to separate notice because it is deemed a separate "person" from the joint venture under the Retailers' Occupation Tax Act and the Use Tax Act.  See 
Cook
, 281 Ill. App. 3d at 176, 666 N.E.2d at 896-97.  The 
Cook
 court concluded that "the partnership is an entity separate from the partners" because the tax statutes defined a partnership as a "person"; we note that the statutes similarly define a "joint adventure" as a "person."  See 
Cook
, 281 Ill. App. 3d at 176, 666 N.E.2d at 896-97; 35 ILCS 105/2, 120/1 (West 1996).  The 
Cook
 court also based its conclusion on the fact that a partnership can own property.  See 
Cook
, 281 Ill. App. 3d at 176, 666 N.E.2d at 897.

The 
Cook
 opinion cites no authority for the proposition that every "person" must be considered a separate entity for all purposes.  Although a partnership is treated as a separate entity for the purpose of owning property, it is not a separate legal entity.  
E.g.
, 
In re Marriage of Werries
, 247 Ill. App. 3d 639, 645, 616 N.E.2d 1379, 1386 (1993).  Palumbo has identified no provision of the Retailers' Occupation Tax Act or the Use Tax Act that expressly (or even impliedly) abrogates the personal liabil­ity imposed on partners for partnership debt by Illinois partner­ship law.  Palumbo cites a number of provisions of the Illinois Code of Civil Procedure addressing the treatment of partners and partnerships in civil litigation.  Aside from 
Cook
, which likened a final assessment to a judgment, Palumbo cites no case law holding that the applicable tax statutes or due process require that partners and partnerships be treated identically to their treatment under the Illinois Code of Civil Procedure in the context of recording a tax lien.

Palumbo states that the Department "jumped the gun" by recording the lien.  However, the record on appeal shows that the Department did not act with all deliberate speed to collect the assessments at issue.  Moreover, prior to any attempt by the Department to reduce the lien to judgment or levy upon Palumbo's property, Palumbo filed its complaint for declaratory judgment, claiming a lack of due process in the assessment of the taxes.  The general rule in Illinois is that questions regarding the propriety or regularity of an assessment are generally required to be raised before the Department and then, if necessary, before the circuit court by way of administrative review.  See, 
e.g.
, 
Department of Revenue v. Downstate Coal Co.
, 11 Ill. 2d 317, 321-22, 143 N.E.2d 247, 250 (1957).
(footnote: 3)  In tax cases, equity generally will not assume jurisdiction to grant relief where an adequate remedy at law exists.  
Schlenz v. Castle
, 115 Ill. 2d 135, 141, 503 N.E.2d 241, 243 (1986).  Furthermore, in all but extraordi­nary cases, tax relief is not afforded by way of declaratory judgment in cases which would not have merited relief by way of injunction.  
Schlenz
, 115 Ill. 2d at 141, 503 N.E.2d at 242-43; 
Goodyear Tire & Rubber Co. v. Tierney
, 411 Ill. 421, 430, 104 N.E.2d 222, 226 (1952).

In sum, given the facts and circumstances of this case, the trial court did not err in concluding that Palumbo was not denied due process of law in this matter.  

For all of the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

BUCKLEY, J., and GALLAGHER, J., concur.

FOOTNOTES
1:  Accordingly, the Department was permanently enjoined from collecting or attempting to collect taxes from a general partner based on the liability of the limited partnership.  See 
Cook
, 281 Ill. App. 3d at 174, 666 N.E.2d at 895.  The Department is an arm of the State.  
E.g.
, 
Moline Tool Co. v. Dept. of Revenue
, 410 Ill. 35, 39, 101 N.E.2d 71, 73 (1951).  Thus, the Department is typically immune from suit, except as provided for by statutes such as the Administrative Review Law.  
E.g.
, 735 ILCS 5/3-101 
et seq.
 (West 1996).  However, the Department apparently did not raise the issue of sovereign immunity in 
Cook
.  Although the complaint in this case refers to actions of the Department, we note that Palumbo's complaint names Director Wagner, rather than the Department, and alleges that Wagner has acted illegally.

2:  We note that 
Pintozzi
, 
Semenek
 and 
Cook
 were primarily concerned with the Retailers' Occupation Tax Act, whereas this case also involves the Use Tax Act.  However, these statutes are comple­mentary in purpose and function; the Use Tax Act prevents avoidance of the Retailers' Occupation Tax Act.  
Chicago Tribune Co. v. Johnson
, 106 Ill. 2d 63, 67-68, 477 N.E.2d 482, 483-84 (1985).  Indeed, the collection mechanisms of the Retailers' Occupation Tax Act are applicable in the context of the Use Tax Act.  35 ILCS 105/12 (West 1996).

3:  We note that in the 
Cook
 opinion, the court suggested that the partnership was the only "person aggrieved" that could seek a hearing or rehearing before the Department.  See 
Cook
, 281 Ill. App. 3d at 176-77, 666 N.E.2d at 897.  In this case, however, the Department took the position that Palumbo was individually notified of the potential liability assessed against it.  The trial court held that Palumbo was properly notified.  The Department has recorded liens against property held by Palumbo individually, based on the assessments at issue.  Given these facts, it seems quite improbable that the Department would conclude that Palumbo lacked standing to seek a hearing regarding its liability.